# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 11, 2010 Session

## GARY M. GOSSETT v. TRACTOR SUPPLY COMPANY, INC.

**Appeal by Permission from the Court of Appeals, Middle Section
Chancery Court for Davidson County
No. 04-1484-IV      Richard H. Dinkins, Chancellor**

---

**No. M2007-02530-SC-R11-CV - Filed September 20, 2010**

---

The employee brought an action for common law retaliatory discharge against his employer for refusal to participate in an allegedly illegal activity. The employer moved for summary judgment, presenting evidence of a legitimate reason for the employee's discharge pursuant to the framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The employer also argued that summary judgment was warranted pursuant to Collins v. AmSouth Bank, 241 S.W.3d 879 (Tenn. Ct. App. 2007), because the undisputed facts showed that the employee did not report the alleged illegality. The trial court granted summary judgment, which the Court of Appeals reversed. We hold that the McDonnell Douglas framework is inapplicable at the summary judgment stage because it is incompatible with Tennessee summary judgment jurisprudence. We also hold that an employee alleging retaliatory discharge for refusal to participate in an illegal activity need not report the illegality. We therefore affirm the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission;
Judgment of the Court of Appeals Affirmed**

JANICE M. HOLDER, C.J., delivered the opinion of the Court, in which GARY R. WADE, and SHARON G. LEE, JJ., joined. CORNELIA A. CLARK, J., filed a separate opinion dissenting in part and concurring in the judgment, in which WILLIAM C. KOCH, JR., J. joined.

Douglas Ray Pierce and James Andrew Farmer, Nashville, Tennessee, for the appellant, Tractor Supply Company, Inc.

Wade Bonham Cowan, Nashville, Tennessee, for the appellee, Gary M. Gossett.

## OPINION

### I. Facts and Procedure

Defendant Tractor Supply Company, Inc., (Tractor Supply) employed Gary Gossett as an "Inventory Control Manager" in its General Accounting Department until his discharge. As Inventory Control Manager, Mr. Gossett prepared the inventory reserve analysis, which calculates the amount of money Tractor Supply must reserve each fiscal quarter to account for excess or slow-moving inventory. Each dollar reserved proportionately decreases Tractor Supply's earnings. After completing the inventory reserve analysis, Mr. Gossett delivered it to his immediate supervisor, Vice President-Controller David Lewis, for use in Tractor Supply's quarterly earnings report to the Securities & Exchange Commission. The process was overseen by Tractor Supply's Chief Financial Officer, Calvin Massmann.

According to Mr. Gossett, during the first week of October 2003, Mr. Massmann instructed him to remove products from the inventory reserve. Mr. Gossett contends that this action would have artificially increased the quarterly earnings statement in violation of the Securities Exchange Act of 1934 and related federal securities regulations. Mr. Gossett specifically alleges that Mr. Massmann "wanted [Mr. Gossett] to look at all the various categories that made up the Company's inventory mix and find creative ways to remove products that seemed to be creating the greatest need for additional reserves." Mr. Gossett states that he refused to participate in the allegedly illegal activity, which displeased Mr. Massmann, and submitted an accurate inventory reserve analysis to Mr. Lewis. On November 7, 2003, after consulting with Mr. Massmann and Tractor Supply's human resource manager, Mr. Lewis discharged Mr. Gossett.

Mr. Gossett brought an action for common law retaliatory discharge based on a violation of public policy. He specifically alleged that Tractor Supply discharged him for refusing to participate in Mr. Massmann's allegedly illegal activity. Tractor Supply moved for summary judgment, arguing that Mr. Gossett could not prove the essential causation element of his claim at trial. The trial court found that the case presented genuine issues of material fact, denied Tractor Supply's motion, and set a date for trial.

Six weeks before trial, however, Tractor Supply filed a motion requesting that the trial court reconsider and revise its order denying summary judgment in light of Collins v. AmSouth Bank, 241 S.W.3d 879 (Tenn. Ct. App. 2007). In reconsidering its order, the trial court observed that, pursuant to Collins, "reporting the alleged illegal activity is an essential element of a cause of action for retaliatory discharge." The trial court granted summary judgment because it was undisputed that Mr. Gossett did not report Mr. Massmann's allegedly illegal activity to anyone.

The Court of Appeals reversed the grant of summary judgment. We granted Tractor Supply's application for permission to appeal.

## II. Analysis

The issue before us is whether Tractor Supply is entitled to summary judgment as to Mr. Gossett's retaliatory discharge claim. The granting or denying of summary judgment is a question of law, which we review de novo. Blair v. W. Town Mall, 130 S.W.3d 761, 763 (Tenn. 2004).

### A.

Tractor Supply argues that summary judgment is warranted when the motion for summary judgment is analyzed pursuant to the framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Our analysis of this argument requires that we first describe the McDonnell Douglas framework, this Court's similar but distinct framework adopted in Anderson v. Standard Register Co., 857 S.W.2d 555, 559 (Tenn. 1993), and the frameworks' application in Tennessee.

In McDonnell Douglas, the United States Supreme Court set forth for use at trial the "basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252 (1981). Pursuant to McDonnell Douglas, if an employee proves a prima facie case of discrimination or retaliation, the employee creates a rebuttable presumption that the employer unlawfully discriminated or retaliated against him or her. Burdine, 450 U.S. at 254. The burden of production shifts to the employer to articulate a legitimate and nondiscriminatory or nonretaliatory reason for the action. Id. at 252-53. If the employer satisfies its burden, the presumption of discrimination or retaliation "drops from the case," id. at 255 n.10, which sets the stage for the factfinder to decide whether the adverse employment action was discriminatory or retaliatory. U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-15 (1983). The employee, however, "must . . . have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. Tennessee courts have applied this evidentiary framework to statutory employment discrimination and retaliation claims. See e.g., Allen v. McPhee, 240 S.W.3d 803, 819-23 (Tenn. 2007); Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 708-09 (Tenn. 2000).

For common law retaliatory discharge cases such as the one before us, this Court has adopted an analysis similar to but distinct from the McDonnell Douglas framework. At trial, the employee has the burden of proving the four elements of the claim:

(1) that an employment-at-will relationship existed;

(2) that the employee was discharged;

(3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and

(4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

Crews v. Buckman Labs. Int'l, Inc., 78 S.W.3d 852, 862 (Tenn. 2002) (citations omitted). Proof of a causal link between the employee's exercise of a protected right or compliance with clear public policy and the employer's decision to discharge the employee then "imposes upon the employer the burden of showing a legitimate, non-pretextual reason for the employee's discharge." Anderson, 857 S.W.2d at 559. No opinion of this Court addressing common law retaliatory discharge, however, has described how an employee must respond to the employer's proffered reason.[1] Nor have we been called on, until now, to demonstrate how the employer's burden of showing a legitimate reason for discharge applies at the summary judgment stage.[2]

---

[1] We have addressed the common law retaliatory discharge cause of action in twelve opinions. Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528 (Tenn. 2002); Crews, 78 S.W.3d 852; Fahrner v. SW Mfg., Inc., 48 S.W.3d 141 (Tenn. 2001); Stein v. Davidson Hotel Co., 945 S.W.2d 714 (Tenn. 1997); Coffey v. Fayette Tubular Prods., 929 S.W.2d 326 (Tenn. 1996); Conatser v. Clarksville Coca-Cola Bottling Co., 920 S.W.2d 646 (Tenn. 1995); Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822 (Tenn. 1994); Anderson, 857 S.W.2d 555; Hodges v. S.C. Toof & Co., 833 S.W.2d 896 (Tenn. 1992); Harney v. Meadowbrook Nursing Ctr., 784 S.W.2d 921 (Tenn. 1990); Chism v. Mid-South Milling Co., 762 S.W.2d 552 (Tenn. 1988); Clanton v. Cain-Sloan Co., 677 S.W.2d 441 (Tenn. 1984).

[2] Guy v. Mutual of Omaha Insurance Co., Anderson v. Standard Register Co., Harney v. Meadowbrook Nursing Center, and Chism v. Mid-South Milling Co. addressed motions for summary judgment, but all four opinions disposed of the motions without addressing how an employee must respond after an employer articulates a legitimate reason for the discharge. Anderson v. Standard Register Co. provides examples of legitimate, non-pretextual reasons, as the separate opinion correctly observes. However, the Court ultimately granted summary judgment in Anderson because the employee failed to show a prima facie case of retaliatory discharge, 857 S.W.2d at 559, and the Court therefore did not apply any of the provided examples of legitimate, non-pretextual reasons.

B.

This case presents us with an opportunity to consider the continued viability of the McDonnell Douglas and the Anderson frameworks (collectively the McDonnell Douglas framework) at the summary judgment stage. We therefore review the McDonnell Douglas framework in the context of Tennessee summary judgment law, particularly in light of our recent clarification of summary judgment in Hannan v. Alltel Publishing Co., 270 S.W.3d 1, 8-9 (Tenn. 2008).

Summary judgment operates to dispose of a case only when it presents no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Rule 56 therefore precludes trial courts from deciding issues of material fact in ruling on a motion for summary judgment. Mills v. CSX Transp., Inc., 300 S.W.3d 627, 631 (Tenn. 2009). To show that a case presents no genuine issue of material fact, a party moving for summary judgment must produce evidence or refer to evidence in the record "that affirmatively negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." Id. (citing Hannan, 270 S.W.3d at 8-9). "To affirmatively negate an essential element of the nonmoving party's claim, [the moving party] must point to evidence that tends to disprove a material factual allegation made by the nonmoving party." Id. (citing Martin v. Norfolk S. Ry. Co., 271 S.W.3d 76, 84 (Tenn. 2008)). If the moving party fails to satisfy this burden of production, summary judgment is not warranted. Id.

Evidence satisfying an employer's burden of production pursuant to the McDonnell Douglas framework does not necessarily demonstrate that there is no genuine issue of material fact. The McDonnell Douglas framework requires only that an employer offer evidence establishing a legitimate alternative to the reason for discharge alleged by the employee. Burdine, 450 U.S. at 254. A legitimate reason for discharge, however, is not always mutually exclusive of a discriminatory or retaliatory motive and thus does not preclude the possibility that a discriminatory or retaliatory motive played a role in the discharge decision. Cf. Anderson, 857 S.W.2d at 558 (adopting the "substantial factor" test that an employee need only show a protected action "constituted an important or significant motivating factor for the discharge," not the exclusive or determinative factor, to establish a prima facie retaliatory discharge claim). Indeed, Title VII of the Civil Rights Act recognizes that an adverse employment action may be the result of both a legitimate reason and a discriminatory motive. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 94-95 (2003). Furthermore, evidence showing a legitimate reason for discharge can satisfy the requirements of the McDonnell Douglas framework without tending to disprove any factual allegation by the employee. An employer therefore may meet its burden of production pursuant to McDonnell Douglas without satisfying the burden of production set forth in Tennessee Rule

of Civil Procedure 56.04 for a party moving for summary judgment. See, e.g., Mills, 300 S.W.3d at 631; Martin, 271 S.W.3d at 83; Hannan, 270 S.W.3d at 5; Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 88 (Tenn. 2000); McCarley v. W. Quality Food Serv., 960 S.W.2d 585, 588 (Tenn. 1998); Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn. 1993).

The facts of this case illustrate why evidence of a legitimate reason for discharge does not necessarily show that there is no genuine issue of material fact. In support of its motion for summary judgment, Tractor Supply points to a deposition by Mr. Lewis in which he states that he discharged Mr. Gossett to reduce Tractor Supply's workforce. This reason satisfies Tractor Supply's burden of production pursuant to the McDonnell Douglas framework. See, e.g., Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990). Mr. Lewis's statements show that reducing Tractor Supply's work force was one reason for discharging Mr. Gossett. Mr. Lewis's statements do not show, however, that reducing its work force was the exclusive reason for discharging Mr. Gossett. Mr. Lewis's statements do not show an absence of a retaliatory motive. Nor do Mr. Lewis's statements tend to disprove any of Mr. Gossett's factual allegations. Even if we take Mr. Lewis's statements as true, there remains a question of fact as to whether the retaliatory motive alleged by Mr. Gossett amounted to a substantial factor in Tractor Supply's discharge decision. See Guy, 79 S.W.3d at 525. Tractor Supply therefore has satisfied its burden of production pursuant to the McDonnell Douglas framework without satisfying its burden of production for summary judgment. See Hannan, 270 S.W.3d at 8-9.

Furthermore, when applied at the summary judgment stage, the shifting burdens of the McDonnell Douglas framework obfuscate the trial court's summary judgment analysis. The McDonnell Douglas framework "is intended to progressively sharpen the inquiry into the elusive factual question of intentional discrimination" or retaliation. Burdine, 450 U.S. at 254 n.8. Although such inquiry is particularly appropriate at trial, it is ill-suited for the purpose of determining whether "there is no genuine issue as to any material fact." Tenn. R. Civ. P. 56.04. The burden-shifting analysis explained in Hannan, for example, "can be an important tool in deciding whether summary judgment is appropriate," Mills, 300 S.W.3d at 634, because it specifically operates to show that there is no genuine issue of material fact as to an essential element. See id. at 631. In contrast, the McDonnell Douglas framework is a tool that trial courts use "to evaluate the evidence in light of common experience as it bears on the critical question of discrimination" or retaliation. Aikens, 460 U.S. at 715 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). Instead of demonstrating the absence of any genuine issue of material fact, the framework focuses on the "sensitive and difficult" factual question of whether an employer's decision to discharge an employee was discriminatory or retaliatory. Id. at 716.

Because of this difference, the inquiries required by the McDonnell Douglas framework may result in trial courts disposing of factual questions on summary judgment. This unintended result is particularly obvious when a court is assessing whether the employer's proffered reason for an adverse employment action is pretextual. In addressing the issue of pretext, a court may fail to consider the facts alleged by the employee to show a prima facie case. As explained by Judge Tymkovich of the United States Court of Appeals for the Tenth Circuit, "the compartmentalization of evidence causes courts to put on blinders, looking at categories of evidence narrowly while the totality of the evidence may point to discrimination." Timothy M. Tymkovich, The Problem with Pretext, 85 Denv. U. L. Rev. 503, 519 (2008); see Wells v. Colo. Dept. of Transp., 325 F.3d 1205, 1225 (10th Cir. 2003) (Hartz, J., concurring). When focusing solely on whether the employee showed a genuine issue of material fact regarding the employer's proffered reason, a court may overlook the employee's evidence establishing the prima facie case. This oversight causes a court to contravene our instruction that evidence must be construed in a light most favorable to the employee as the nonmoving party, see Martin, 271 S.W.3d at 84, and can result in an improper grant of summary judgment.

In Allen v. McPhee, for example, this Court separated the evidence supporting the employee's prima facie case, close temporal proximity, from our consideration of whether the employee presented evidence of pretext. See 240 S.W.3d at 823. The matter was before us on the employee's retaliation claim under the Tennessee Human Rights Act. Applying the McDonnell Douglas framework, we first held that a reasonable jury could conclude that the employee, Allen, established a prima facie case of retaliation. We then stated that her employer "is entitled to summary judgment if it can articulate a legitimate, non-discriminatory reason for transferring Allen and if Allen is unable to present evidence that raises a genuine dispute over whether the proffered reason is pretextual." Id. (citing Young v. Dillon Cos., 468 F.3d 1243, 1249 (10th Cir. 2006)). The employer "contend[ed] that it reassigned Allen . . . to protect her from further harassment" from her supervisor, whom Allen had reported for sexual harassment. Id. In granting summary judgment, we held "that Allen has failed to demonstrate the existence of a genuine issue of material fact regarding [her employer's] motivation for the reassignment." Id.

Without the McDonnell Douglas framework, our summary judgment analysis in Allen would have reached a different outcome. Under well-established law, a court considering a summary judgment motion "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Blair, 130 S.W.3d at 768 (quoting Byrd, 847 S.W.2d 210-11). Summary judgment is warranted if the facts and inferences from those facts "permit a reasonable person to reach only one conclusion." Staples, 15 S.W.3d at 89. When we discard the countervailing evidence that Allen's employer reassigned her to protect her from

further harassment, the record in Allen v. McPhee showed that Allen was reassigned shortly after reporting that her supervisor had sexually harassed her. From this fact and reasonable inferences from this fact construed in favor of Allen, a reasonable person can reach more than one conclusion as to whether the employer transferred Allen in retaliation. Summary judgment therefore was inappropriate. However, the parties in Allen did not question the applicability of the McDonnell Douglas framework at the summary judgment stage in Tennessee, and we were not called on to consider its continued viability. Our reaffirmation of longstanding Tennessee law on summary judgment, however, convinces us that our application of the McDonnell Douglas framework in Allen skewed our summary judgment analysis in favor of the employer.

As Allen demonstrates, applying the McDonnell Douglas framework at the summary judgment stage can result in the grant of a summary judgment despite the presence of genuine issues of material fact. Ironically, the McDonnell Douglas framework was not designed to be an obstacle to trial for the employee. "The shifting burdens of proof set forth in McDonnell Douglas are designed to assure that the '[employee] has his day in court despite the unavailability of direct evidence.'" Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979)).

Furthermore, the McDonnell Douglas framework was designed to permit the trier of fact to better evaluate the evidence as to whether the employer was motivated by a discriminatory or retaliatory intent, see, e.g., Aikens, 460 U.S. 711, 715 (1983), not to remove genuine issues of material fact from a trier of fact. Our decision therefore does not, as the separate opinion argues, make obtaining summary judgment "needlessly more difficult" in employment discrimination and retaliation cases. Rather, it makes summary judgment available equally to all litigants.

Based on the foregoing reasons, we hold that the McDonnell Douglas framework is inapplicable at the summary judgment stage because it is incompatible with Tennessee summary judgment jurisprudence.[3]

---

[3] While opinions of federal intermediate appellate courts are only persuasive authority and not binding on us, see Leggett v. Duke Energy Corp., 308 S.W.3d 843, 871 (Tenn. 2010), we observe that the McDonnell Douglas framework has been the subject of much confusion and criticism in the federal circuit courts of appeals. See e.g., Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1167 (10th Cir. 2007) (Hartz, J., concurring) ("I continue to believe that we should not apply the framework of McDonnell Douglas . . . to review a summary judgment when the existence of a prima facie case is not disputed. . . . Applying that framework is inconsistent with Supreme Court authority, adds unnecessary complexity to the analysis, and is too likely to cause us to reach a result contrary to what we would decide if we focused on 'the ultimate question of discrimination *vel non*.'" (citations omitted)); Wright v. Murray Guard, Inc., 455 F.3d 702, (continued...)

C.

In light of the above analysis, we find the separate opinion's additional arguments for retaining the McDonnell Douglas framework at the summary judgment stage to be unpersuasive. We expect that our holding today will engender less uncertainty than retaining the McDonnell Douglas framework because our holding allows courts to conduct the same summary judgment analysis in all cases. We also disagree that removing the McDonnell Douglas framework from the summary judgment stage will "sharply reduce[] the quantum of proof that a plaintiff needs to survive summary judgment," as the separate opinion contends. A plaintiff requires no proof to survive summary judgment unless the defendant moving for summary judgment first shows there is no genuine issue as to any material fact on an essential element, in which case all plaintiffs share the same burden of production to show a genuine issue of material fact as to that element. Martin, 271 S.W.3d at 84; Hannan, 270 S.W.3d at 5. Removing the McDonnell Douglas framework from the summary judgment stage instead requires defendants seeking summary judgment in discrimination and retaliation claims to produce evidence in accordance with Tennessee Rule of Civil Procedure 56 and longstanding Tennessee law, like all other litigants. See e.g., Mills, 300 S.W.3d at 631.

We also are undeterred by the separate opinion's caution that removing the McDonnell Douglas framework at the summary judgment stage "may ultimately impact the

---

[3] (...continued)
716-21 (6th Cir. 2006) (Moore, J., concurring) (concluding that the McDonnell Douglas framework is "ill suited to the analysis of mixed-motive claims" at summary judgment and stating that "[i]nquiries regarding what actually motivated an employer's decision are very fact intensive and thus will generally be difficult to determine at the summary judgment stage"); Griffith v. City of Des Moines, 387 F.3d 733, 746-48 (8th Cir. 2004) (Magnuson, J., sitting by designation, concurring specially) (stating that "the Supreme Court has gradually chiseled McDonnell Douglas away from its original failing framework to an analysis that still fails to give effect to the language of the Civil Rights Act," and opining that it should not be used to analyze Title VII claims at trial or at summary judgment); Liu v. Amway Corp., 347 F.3d 1125, 1140 n.6 (9th Cir. 2003) (Pregerson, J., dissenting in part) ("'[T]he process dictated by the Civil Rights Act of 1991 [in § 2000e-2(m)] is more useful than the analysis required by McDonnell Douglas.'" (quoting Dare v. Wal-Mart Stores, Inc., 267 F. Supp. 2d 987, 991 (D. Minn. 2003))); Dunaway v. Int'l Bhd. of Teamsters, 310 F.3d 758, 762-63 (D.C. Cir. 2002) (stating that in a summary judgment motion on employee's claim of employment discrimination in which an employer has articulated a legitimate reason for the adverse employment action, "the proper question now is whether the employer unlawfully discriminated against the plaintiff," not pretext); Tymkovich, supra, at 505, 529 ("[T]his focus on pretext has shifted the emphasis of an employment discrimination case away from the ultimate issue of whether the employer discriminated against the complaining employee," and "it may now be time to replace the framework with a simpler, more direct method of determining the question of discrimination."). For an example of the current state of the McDonnell Douglas framework in federal courts, White v. Baxter Healthcare Corp. provides a survey of the "widely differing approaches to the question of how to analyze summary judgment challenges in Title VII mixed-motive cases" among the federal courts of appeals. 533 F.3d 381, 398-99 (6th Cir. 2008)

viability of the framework at trial." The separate opinion states that the reasoning behind our decision may undercut "an employer's motion for directed verdict at the conclusion of the proof, based on uncontradicted evidence that the employee was discharged for a legitimate, non-pretextual reason." We disagree.

While motions for summary judgment and directed verdict are considered in the same manner, Blair, 130 S.W.3d at 768, a court's grant of summary judgment must be more deliberate because it occurs before the nonmoving party has had the opportunity to present all evidence at trial. Mills, 300 S.W.3d at 632 n.3 (citing Hamrick v. Spring City Motor Co., 708 S.W.2d 383, 389 (Tenn. 1986)). In contrast, when an employer moves for directed verdict, the employee has had the opportunity to present his or her case in full. See Tenn. R. Civ. P. 50.01. "Uncontradicted evidence that the employee was discharged for a legitimate, non-pretextual reason" at the directed verdict stage shows that the employee did not present any proof at trial of a retaliatory reason for the discharge. The employer therefore would be entitled to directed verdict because the strongest legitimate view of these facts in favor of the employee, with all evidence construed in the employee's favor and all countervailing evidence discarded, permits a reasonable person to reach only one conclusion on the essential causation element. See Johnson v. Tenn. Farmers Mut. Ins. Co., 205 S.W.3d 365, 370 (Tenn. 2006).

Additionally, the separate opinion's concern reflects confusion about our holding. As the United States Supreme Court explained in Aikens, evidence of a legitimate reason for the discharge, combined with the employee's evidence of a prima facie case, generally presents a question of fact for the factfinder. 460 U.S. at 715 (quoting Burdine, 450 U.S. at 253). Therefore, an employer that has satisfied its burden of production for the McDonnell Douglas framework likely has not satisfied its burden of production for summary judgment. However, our holding does not exclude the possibility of summary judgment when an employer presents *undisputed* evidence that a legitimate reason was the *exclusive* motivation for discharging the employee. In such a case, the employer has demonstrated that the employee cannot show that a discriminatory or retaliatory reason was a substantial factor in the discharge decision and therefore has met its burden of production for summary judgment. Because no genuine issue of material fact exists on an essential element, either summary judgment or directed verdict may be granted.

D.

We further observe that summary judgment must be denied in this case because Mr. Gossett has clearly identified genuine issues of material fact. In Mills v. CSX Transportation, Inc., we stated that when a nonmoving party has clearly identified a genuine issue of material fact on the element that the moving party is attempting to negate, a court

need not decide whether the party moving for summary judgment has satisfied its burden of production pursuant to Tennessee Rule of Civil Procedure 56. 300 S.W.3d at 634. Without regard to whether a moving party has met its burden of production, summary judgment is not warranted when there is a genuine issue of any material fact as to the contested element. Tenn. R. Civ. P. 56.04.

Tractor Supply, in its summary judgment motion, pointed to evidence contesting Mr. Gossett's ability to establish at trial that a retaliatory motive was a substantial factor in Tractor Supply's decision to discharge him. Mr. Gossett in turn proffered evidence showing genuine issues of material fact about whether Tractor Supply's motive for discharging Mr. Gossett was in fact retaliatory. Specifically,

- Mr. Gossett points to the deposition testimony of Accounts Payable Manager John Trotter, who assumed the Inventory Control Manager responsibilities in addition to his own responsibilities. Mr. Trotter described the two job responsibilities as "dramatically different," raising a genuine issue of material fact as to whether redundancy between the two positions actually motivated Mr. Gossett's discharge as Mr. Lewis maintained.

- Mr. Gossett points to John Trotter's statement that Mr. Lewis said shortly after discharging Mr. Gossett that he was discharged for "unacceptable performance," not because of a redundancy in management, raising a genuine issue of material fact about Tractor Supply's motivation behind Mr. Gossett's discharge.

- Mr. Gossett points to a newspaper advertisement published the Sunday before he was discharged in which Tractor Supply sought a financial analyst for Mr. Gossett's department, raising a genuine issue of material fact as to whether Tractor Supply actually intended to reduce its workforce by discharging Mr. Gossett.

- Mr. Gossett points to facts showing that his predecessor was demoted instead of discharged when Tractor Supply decided to remove him from the Inventory Control Manager position, raising a genuine issue of material fact as to why Tractor Supply discharged rather than demoted Mr. Gossett.

These genuine issues of material fact about Tractor Supply's proffered motivation preclude summary judgment. Id. at 634-35; cf. White, 533 F.3d at 393 n.6 ("The question of whether the employer's judgment was reasonable or was instead motivated by improper considerations is for the *jury* to consider.").

-11-

E.

Tractor Supply next argues that summary judgment is warranted pursuant to Collins because Mr. Gossett did not report to an authority within or outside Tractor Supply that Mr. Massmann had asked him to perform an illegal activity. It is undisputed that Mr. Gossett did not report the activity, and we therefore address only whether reporting is an essential element of Mr. Gossett's claim.

The elements of a common law retaliatory discharge action can apply to many distinct factual scenarios. See Chism, 762 S.W.2d at 556. We have stated that it can arise when an employee is discharged either for refusing to remain silent about an illegal activity or for refusing to participate in an illegal activity. Anderson, 857 S.W.2d at 556; see Chism, 762 S.W.2d at 556. When an employee is discharged for *refusing to remain silent* about an illegal activity, the employee must show that his or her reporting of the illegal activity furthered a clear public policy. See Guy, 79 S.W.3d at 537 & n.4. Without this showing, the claimant cannot establish the third element of the common law retaliatory discharge action, which requires proof of the clear public policy that the employer violated by the discharge. See Crews, 78 S.W.3d at 862.

We have never held that an employee alleging retaliatory discharge for *refusing to participate* in an illegal activity must report the illegality to show that the employer violated a clear public policy. Cf. Reynolds, 887 S.W.2d 822 (upholding a verdict in favor of truckers claiming retaliatory discharge for refusing to drive uninspected trucks in violation of federal and state laws without considering whether the truckers reported their employer's illegal activity). Tractor Supply asserts that pursuant to Collins, 241 S.W.3d at 885, reporting the allegedly illegal activity is essential to showing the third element in a case for common law retaliatory discharge based on refusing to participate in an illegal activity.

In Collins, the employee "alleged that she was fired solely because she refused to go along with [her supervisor's] illegal instructions." Id. at 882. The Court of Appeals affirmed the summary judgment on the employee's statutory and common law retaliatory discharge claims and held that "[p]ersons asserting either a statutory or common law whistleblowing claim must prove" that "their employer violated a law or regulation" and that their efforts to report "an illegal or unsafe practice furthered an important public policy interest." Id. at 885 (citing Guy, 79 S.W.3d at 538 n.4). It found summary judgment proper because the employee failed to demonstrate that her supervisor's request was illegal and because she "failed to present any proof that she reported or attempted to report [her supervisor's] request to other bank officials or regulators." Id. at 885-86.

Although we agree with the statement in <u>Collins</u> concerning the requirements of whistleblowing claims, <u>Collins</u> involved a plaintiff who refused to participate in an allegedly illegal activity, not a plaintiff who refused to remain silent about it. In a "whistleblowing" case, in which a failure to remain silent is alleged, the nature of the claim asserts that silence was broken. The employee has no cause of action unless the employee shows that the reporting furthered some clear public interest. A case alleging a refusal to participate does not require that silence be broken for a claim to exist, and reporting therefore is not integral to the claim. For the purposes of the common law retaliatory discharge cause of action, we decline to hold that an employee's refusal to violate the law never furthers a clear public policy unless the employee reports the employer's attempted violation. The Court of Appeals therefore incorrectly applied the reporting element to the employee's action for common law retaliatory discharge for refusing to participate in an illegal activity.

Our decision not to add a reporting requirement will not expand the use of the common law retaliatory discharge cause of action or cause the retaliatory discharge exception to swallow the employment-at-will doctrine that Tennessee courts have long recognized. <u>Chism</u>, 762 S.W.2d at 555-56. Claimants alleging common law retaliatory discharge must identify "'an unambiguous constitutional, statutory or regulatory provision'" as evidence of the public policy that the employee's discharge violates. <u>Guy</u>, 79 S.W.3d at 535 (quoting <u>Chism</u>, 762 S.W.2d at 556); <u>Crews</u>, 78 S.W.3d at 862. This element sufficiently limits the retaliatory discharge cause of action to only those cases in which a discharge violates public policy. <u>Chism</u>, 762 S.W.2d at 557. <u>Collins</u>, for example, properly affirmed summary judgment because the employee alleging retaliatory discharge failed to identify an unambiguous constitutional, statutory, or regulatory provision evincing a clear public policy that the employee furthered by refusing to follow her supervisor's instruction. 241 S.W.3d at 885-86 & n.4.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the Court of Appeals reversing the trial court's grant of summary judgment to Tractor Supply. Costs are assessed against the appellant, Tractor Supply Company, Inc., for which execution may issue if necessary.

_____
JANICE M. HOLDER, CHIEF JUSTICE