# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 14, 2011 Session

## PORSHA PERKINS v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Circuit Court for Davidson County**
**No. 08C733       Barbara N. Haynes, Judge**

---

**No. M2010-02021-COA-R3-CV - Filed August 25, 2011**

---

A social worker employed by an agency of the Metropolitan Government of Nashville and Davidson County was discharged from her job following an allegation that she had pinched a child attending a Head Start program.  She then filed a discrimination and wrongful termination claim with the Metro Civil Service Commission.  After the allegations against her proved to be baseless, she settled her claim with Metro for $45,000 and agreed not to be reinstated in her former job.  She subsequently filed a complaint in the Circuit Court of Davidson County for retaliatory discharge and for employment discrimination.  The discrimination claim was eventually dismissed by agreed order.  Metro filed a motion for summary judgment on the remaining claim for wrongful discharge.  The trial court granted the motion, reasoning among other things that because of the settlement of her claim and her agreement not to be reinstated, she could not prove, as a matter of law, that she was "adversely affected" in any material way by the termination of her employment.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Joseph Howell Johnston, Nashville, Tennessee, for the appellant, Porsha Perkins.

Sue B. Cain, Director of Law, The Department of Law of the Metropolitan Government of Nashville and Davidson County; J. Brooks Fox, Christopher M. Lackey, Assistant Metropolitan Attorneys, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County.

## OPINION

## I. PRIOR PROCEEDINGS

Porsha Perkins has filed an appeal from a summary judgment dismissing her claim for wrongful discharge against the Metropolitan Government of Nashville and Davidson County ("Metro" or "Metro Government"). Prior to the Circuit Court's ruling, Ms. Perkins had filed number of administrative and judicial actions related to the same claim, resulting in proceedings in other forums. Since those earlier proceedings involved issues and allegations that are relevant to the appeal before us, we must discuss them at some length.

Ms. Perkins is a social worker with a masters degree. She began working for the Metropolitan Action Commission (MAC) in May of 2001 as a Family Services Specialist at the Ross Head Start program. MAC is an agency of Metro Government. Ms. Perkins's duties were to determine the eligibility of low-income families for federal assistance programs such as Head Start. Most of her work therefore involved dealing with parents rather than with children, but she had to assist at times in a classroom where two adults were required to be present.

On October 31, 2005, Ms. Perkins filed a complaint in the Chancery Court of Davidson County against Metro for employment discrimination based on her race and age. Her complaint was based on an incident that led her supervisors to accuse her of dishonesty and to suspend her for one day without pay. She also filed a separate petition for writ of certiorari in Chancery Court, alleging that she had been deprived of due process in an administrative proceeding relating to the same incident.

On November 16, 2005, one of Ms. Perkins' fellow employees filed a report with the Manager of the Head Start center, alleging that while Ms. Perkins was assisting a teacher in a Head Start classroom, she pinched a boy of pre-school age, leaving a visible mark on his arm. MAC began an internal investigation, and on November 21, 2005, it placed Ms. Perkins on administrative leave with pay, pending the result of the investigation.[1] MAC also reported the allegation to the Department of Human Services (DHS) and the Department of Children's Services (DCS), as it was obligated to do under Tenn. Code Ann. § 37-1-403(a)(1). Those agencies then began their own investigations into the alleged incident.[2]

---

[1]The record indicates that Ms. Perkins remained on leave until she was discharged from her job.

[2]The record indicates that DCS was the actual investigating agency, and that DHS relied upon the DCS investigation as the basis for its own determinations.

Ms. Perkins denied the allegation from the very beginning. She also claimed that on the same day that she was accused of pinching a child, she had observed her accuser hit another child on the head with a broom handle and that she had attempted to report that incident of abuse to her superiors, but that they had paid no attention. In any case, DHS and DCS found probable cause that Ms. Perkins had pinched the child. On the recommendation of DHS, the parties agreed on November 22, 2005, that Ms. Perkins be placed on a temporary safety plan that prohibited her from being left alone with children.

According to DHS, the agency subsequently received a "Disposition Decision" from DCS that indicated that the case was closed and that Ms. Perkins had been found to be a risk to small children. DHS accordingly created a permanent safety plan that excluded Ms. Perkins entirely from positions involving child care. Ms. Perkins retained counsel and requested a full evidentiary hearing before both agencies. However, in a letter dated January 12, 2006, sent by DHS to the MAC Director, DHS declared that it had received written notice from DCS that the investigation had not, in fact, been completed as was previously reported, and therefore that the exclusion of Ms. Perkins from child care was premature, and the previously established temporary safety plan should be reinstated.

Nonetheless, MAC notified Ms. Perkins by letter on January 13, 2006 that her employment was being terminated immediately. The letter repeated the allegations against Ms. Perkins and the terms of the safety plan, and explained that because MAC was a small agency, it could not assume the burden of guaranteeing the presence of another adult when Ms. Perkins was in a room with a child. Ms. Perkins subsequently filed an appeal of the termination of her employment with the Metro Civil Service Commission.

Ms. Perkins also filed a discrimination and wrongful termination claim with the EEOC (Equal Opportunity Employment Commission) on September 11, 2006, contending that she had been the victim of unlawful race and age discrimination and retaliation. She alleged that when she reported the abuse of a child by a white employee, her working conditions deteriorated and she was charged with child abuse, placed on administrative leave, and ultimately terminated from her job, while the white employee whom she had accused of abuse was merely placed on a temporary safety plan and was able to keep her job. She also claimed that MAC retaliated against her because of her previous discrimination complaints. She filed an amended EEOC claim on September 20, 2006. At her request, the EEOC sent her a "Notice of Right to Sue" on December 5, 2007. The notice stated that the EEOC was closing her case, and that she had 90 days from the receipt of the notice to file a lawsuit in federal or state court.

On January 17, 2007, DCS dismissed the allegations of abuse against Ms. Perkins as "Not Indicated." In reliance on the DCS decision DHS closed its own investigative files on

Ms. Perkins, concluding that the child abuse charges against her were unfounded. After the allegations of abuse were laid to rest, Ms. Perkins and Metro entered into negotiations for a settlement of her claims. The parties reached a "Release and Settlement Agreement" on August 2, 2007.

Under the terms of the agreement, both of Ms. Perkins' pending actions in Chancery Court were dismissed with prejudice, as was her claim before the Metro Civil Service Commission for the termination of her employment. Metro was ordered to pay all pending court costs. Ms. Perkins received $45,000, representing one and a half years of back pay up to the date of settlement. MAC expunged all references to dishonesty and child abuse from Ms. Perkins' personnel file and agreed that she would retain all her Metro pension rights.[3]

Ms. Perkins also agreed that she "will never apply for and never be hired by MAC (or whatever it may subsequently be named). If Ms. Perkins ever has a reason to enter on to the premises of MAC (or any facilities which it operates) as a visitor or employee of another entity, she will provide reasonable notice to the Executive Director of MAC." One clause in the agreement that Ms. Perkins heavily relies upon in this appeal reads, "Ms. Perkins' complaint filed with the EEOC is not part of this agreement."

## II. THE COMPLAINT IN CIRCUIT COURT

On March 10, 2008, Ms. Perkins filed a Complaint in the Circuit Court of Davidson County "for Employment Discrimination Based on Race and Age and for Retaliation."[4] Ms. Perkins asked the trial court to award her back pay (less the $45,000 she had received in settlement), front pay, loss of benefits and an award of compensatory damages "not to exceed $300,000." Specifically, she asked for such damages "under Title VII for the termination of Plaintiff upon discrimination and retaliation" and under the ADEA, 29 U.S.C. §626(b).

---

[3]After she was terminated, Ms. Perkins filed a claim for unemployment benefits. Her initial claim was approved, and Metro appealed, contending that she was disqualified for benefits because she had been discharged for misconduct connected to her work. A full hearing was conducted, which resulted in a finding that the evidence did not support the conclusion that Ms. Perkins had been guilty of misconduct, and her eligibility for unemployment benefits was accordingly affirmed.

[4]In addition to Metro Government, the Executive Director and the Human Resources Director of MAC were named as defendants in their individual capacities. On June 10, 2010, the parties entered into an agreed order dismissing all the claims against the individual defendants, as well as Ms. Perkins' claim against Metro under 42 U.S.C. § 1981a.

The defendants filed a motion for summary judgment on April 1, 2010, and Ms. Perkins responded in opposition to the motion for summary judgment. The motion for summary judgment was heard on June 4, 2010. On June 21, 2010, the trial court filed an order granting summary judgment to Metro on Ms. Perkins' claims for retaliatory discharge, setting out two separate grounds for its decision.

First, the court reasoned that the evidence showed that MAC had relied in good faith on the determinations of DHS, and thus that the agency discharged Ms. Perkins on the basis of legitimate, nondiscriminatory reasons which she failed to controvert by presenting sufficient information to show that those reasons were merely pretextual. Second, the court found that because Ms. Perkins had already received back pay over her discharge and had agreed not to be reinstated, she could not, as a matter of law, establish that she was adversely affected by the termination of her employment in any material way. Consequently, the trial court held, Ms. Perkins failed to establish a *prima facie* case of retaliatory discharge. Ms. Perkins filed a motion to alter or amend the judgment, which was denied. This appeal followed.

### III. THE STANDARD OF REVIEW

A motion for summary judgment may be granted when the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998). A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d at 83; *Blair v. West Town Mall*, 130 S.W.3d at 764. We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d at 763.

To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). If the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of a genuine issue of material fact. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d at 84; *Hannan v. Alltel Publishing Co.*, 270 S.W.3d at 5; *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847

S.W.2d 208, 215 (Tenn. 1993)).

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Doe v. HCA Health Services, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Housing Authority v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001).

## IV. THE SHIFTING BURDEN IN RETALIATORY DISCHARGE CASES

Ms. Perkins argues that the trial court mistakenly analyzed the issues in this case by applying the burden-shifting framework established by the Unites States Supreme Court for trials in Title VII discrimination and retaliatory discharge cases in *McDonnell-Douglas v. Green,* 411 U.S. 792 (1973). The reason that standard was mistakenly applied is because the Tennessee Supreme Court modified and clarified the standard in an opinion filed after the grant of summary judgment herein.

Under the *McDonnell-Douglas* framework, once an employee has presented evidence of all the elements required to established a *prima facie* case of retaliatory discharge, the burden of production shifts to the employer to produce evidence it had a legitimate and non-discriminatory reason to discharge the employee. *McDonnell-Douglas v. Green,* 411 U.S. at 802.

If the employer succeeds in doing so, then the burden shifts back to the employee to produce evidence that the employer's purported reasons are merely pretextual. If the employee cannot do so, then the employer is entitled to prevail. *McDonnell-Douglas v. Green,* 411 U.S. at 804.[5] *See, also, Anderson v. Standard Register Co.*, 857 S.W.2d 555, 556 (Tenn. 1993) (approving a similar framework in Tennessee).

However, the Tennessee Supreme Court has recently rejected the use of the *McDonnell-Douglas* framework for summary judgment decisions in retaliatory discharge cases. In the case of *Gossett v. Tractor Supply*, 320 S.W.3d 777 (Tenn. 2010) (Clark, J. and

[5]In that case, an African-American mechanic who had been employed by an aerospace manufacturer was laid off from his job as part of a general reduction in the workforce. He subsequently participated in a "stall-in" and a "lock-in" to call attention to the hiring practices of the manufacturer. The manufacturer subsequently advertised open jobs for mechanics. The mechanic applied for the job but was not rehired. The mechanic filed suit, alleging that the manufacturer refused to rehire him because of his race and his prior civil rights activities. The Supreme Court held that the mechanic had proved his prima facia case and that the employer had articulated a non-discriminatory reason for not hiring him, but that the case had to be remanded to give the mechanic the opportunity to prove that the manufacturer's purported reason not to hire him was merely a pretext.

Koch, J., dissenting in part) our Supreme Court found that the strict application of the *McDonnell-Douglas* framework was "incompatible with Tennessee summary judgment jurisprudence." *Gossett v. Tractor Supply*, 320 S.W.3d at 785. The court reasoned that an employer can be motivated by more than one factor when it discharges an employee, and that "[a] legitimate reason for discharge is not always mutually exclusive of a discriminatory or retaliatory motive and thus does not preclude the possibility that a discriminatory or retaliatory motive played a part in the discharge decision." *Gossett v. Tractor Supply*, 320 S.W.3d at 782. Thus, by allowing an employer to prevail on summary judgment just because it can produce evidence of one legitimate reason for discharging an employee, the employee may be deprived of the opportunity to present evidence to a trier of fact of other, perhaps less legitimate reasons for the employer's action.

The court further reasoned that since summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, and also that at the summary judgment stage, the court must consider the evidence presented in the light most favorable to the non-moving party,"[a]n employer therefore may meet its burden of production pursuant to *McDonnell-Douglas* without satisfying the burden of production set forth in Tennessee Rule of Civil Procedure 56.04 for a party moving for summary judgment." *Id. See, also*, *Kinsler v. Berkline, LLC,* 320 S.W.3d 796, 800-801 (Tenn. 2010).

*Gossett v. Tractor Supply* was filed on September 20, 2010, after summary judgment was granted in this case, so the trial court did not have the Supreme Court's guidance on this issue. In this appeal Metro acknowledges that *Gossett* renders the portion of the trial court's judgment which is based on burden-shifting analysis invalid, but Metro contends that the trial court's other ground is sufficient to support its grant of summary judgment.

We agree that the matter should be remanded to the trial court for consideration under *Gossett* as to the reasons for termination. However, we also agree that such remand is not necessary if the trial court correctly concluded that Ms. Perkins could not establish a necessary element of her cause of action.

## V. CLAIMS OF RETALIATORY DISCHARGE

In this lawsuit, Ms. Perkins filed a complaint for retaliatory discharge and discrimination against Metro. Although the complaint set out four separate claims, it stated that "[d]efendant Metro Government is being sued under Title VII . . . and the ADEA only."[6]

---

[6]As noted earlier, Ms. Perkins had originally plead a claim against Metro under 42 U.S.C. § 1981a,
(continued...)

At the time of the ruling on the motion for summary judgment, only two of the original claims, both against Metro, remained. Each claim was set out in the complaint under headings of "Title VII - **Retaliatory Discharge**" and "ADEA - **Retaliatory Discharge**." Ms. Perkins had asked for damages "under Title VII for the **termination** of Plaintiff upon discrimination and retaliation" and under the ADEA, 29 U.S.C. §626(b).

In order to state a *prima facie* case of retaliatory discharge, an employee must prove the following elements: (1) that she engaged in a protected activity; (2) that the exercise of her protected civil rights was known to the defendant; (3) that the defendant thereafter took an employment action adverse to her; and (4) that there was a causal connection between the protected activity and the defendant's adverse employment action. *Miller v. City of Murfreesboro,* 122 S.W.3d 766, 775 (Tenn. Ct. App. 2003). The federal courts have likewise identified an "adverse employment action" as one of the required elements for a retaliatory discharge action. *Akers v. Alvey,* 338 F.3d 491, 497 (6th Cir. 2003) (action under Title VII); *Fox v. Eagle Distributing. Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007) (action under ADEA); *Hansen v. Vanderbilt Univ.*, 961 F. Supp. 1149, 1152 (M.D. Tenn. 1997) (action under ADEA).

The trial court found that the settlement Ms. Perkins and Metro entered into negates the third essential element of retaliatory discharge - an adverse employment action. As we stated above, Ms. Perkins had entered into a Release and Settlement Agreement settling prior litigation regarding her employment. In that Agreement, Ms. Perkins agreed not to apply for another position with MAC and not to be rehired by the agency.[7]

Metro asserts that an employee who voluntarily resigns from employment cannot claim that he or she is the victim of an adverse employment action. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999) (pilot's voluntary resignation precluded relief for adverse employment action under the Americans with Disabilities Act and the Family and Medical Leave Act); *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998) (police officer retired voluntarily rather than being constructively discharged as he claimed, so he was not the victim of an adverse employment action under the ADA); *Speck*

_____

[6](...continued)
but she subsequently entered into an agreed order dismissing that claim.

[7]In that Agreement Ms. Perkins agreed to the dismissal with prejudice of the discrimination actions she brought in Chancery Court against Metro for her one day suspension. Under the same agreement, she also agreed to dismiss her administrative complaint before the Civil Service Commission for termination from her job. As consideration for her agreement, Ms. Perkins received $45,000 in cash, expunction from her personnel file of all references to dishonesty and child abuse, and affirmance of her Metro pension rights.

*v. City of Memphis*, 594 F. Supp. 2d 905, 913 (W.D. Tenn. 2009) aff'd, 370 F. App'x. 622 (6th Cir. 2010) (nursing administrator's voluntary resignation precluded relief under ADEA).[8]

Metro argues that a corollary of this principle is that a voluntary agreement not to be reinstated is equivalent to a resignation. Thus, after a discharged employee agrees not to be reinstated, her discharge should no longer be deemed to be an adverse employment action. Metro cites a number of wrongful discharge cases that it claims supports that argument. Those cases, however, are not on point, for they involve the question of whether a plaintiff employee has voluntarily resigned from a job, or in the alternative whether the resignation was in response to a hostile work environment or intolerable working conditions, in which case the discharged employee is entitled to assert that the resignation was not voluntary but rather that it amounted to a constructive discharge, which is recognized as one type of adverse employment action. *See Crews v. Buckman Laboratories, International, Inc.,* 78 S.W.3d 852, 865 (Tenn. 2002) (citing *Phillips v. Interstate Hotels Corp.*, 974 S.W.2d 680, 687 (Tenn. 1998)); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 34 (Tenn. 1996); *Torrech-Hernandez v. Gen. Elec. Co.*, 519 F.3d 41, 50 (1st Cir. 2008).

We can draw no firm conclusions from the absence of relevant precedent for Metro's theory, but we suspect that one reason is that there are very few cases in which a party reaches a settlement of its claims with its adversary, and then turns around and sues the adversary anew, asserting claims arising from the very same acts that gave rise to the settlement.

In any case, it is widely recognized that reinstatement of employment (coupled with back pay if appropriate) is the preferred remedy in cases involving wrongfully discharged employees, if such reinstatement is feasible. *Coffey v. Fayette Tubular Products*, 929 S.W.2d 326, 331-32 (Tenn. 1996); *Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 432 (Tenn. Ct. App. 1992); *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 398 (6th Cir. 1993); *Wilson v. S & L Acquisition Co., L.P.,* 940 F.2d 1429, 1438 (11th Cir. 1991); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1157 (10th Cir. 1990); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984) *Kempfer v. Automated Finishing, Inc.*, 564 N.W.2d 692, 708 (Wisc. 1997).

---

[8]"Constructive discharge requires a showing (1) that workplace conditions were so difficult that a reasonable person would feel compelled to resign, and (2) that the employer intended to cause the employee to resign or that resignation was a reasonably foreseeable consequence of the employer's actions." *Speck v. City of Memphis*, 594 F. Supp. 2d at 921.

When, as in the present case, a discharged employee freely agrees to surrender any right to be reinstated in her job and receives in exchange valuable consideration equivalent to back pay for all the months between her termination and the date of the settlement, her termination can no longer be considered adverse. Thus, we agree with Metro that Ms. Perkins cannot prove all the required elements to establish a *prima facie* case of retaliatory discharge.[9] She settled her employment claims and agreed not to seek reinstatement or future employment. Consequently, she did not suffer an adverse employment action with regard to continued employment.

Ms. Perkins argues, however, that her discharge was adverse because the settlement did not fully compensate her for the loss of her job. For one thing, although she acknowledges that she has found another job, she complains that it does not pay as well as the one she lost, and she concludes that she is entitled to an award of front pay to make up the difference.

In some circumstances, Tennessee does recognize front pay as a possible equitable remedy in wrongful discharge cases. This court has described it as "an award of prospective damages for the loss of future earnings." *Sasser v. Averitt Express, Inc.*, 839 S.W.2d at 433. Generally, front pay is reserved for those circumstances where it is impossible for the employee to be reinstated or where the employer chooses to pay damages for lost future employment instead of reinstating the employee. However, front pay ". . . is a special remedy, not necessarily warranted in every case but reserved for only the most egregious circumstances. It is not intended to be punitive, or to provide an employee a windfall." *Id. See, also, Lewis v. Federal Prison Industries, Inc.*, 953 F.2d 1277, 1281 (11th Cir. 1992). This case does not present the sort of circumstances that would support an award of front pay.

---

[9]Ms. Perkins contends that Metro is not entitled to rely on the contents of the Release and Settlement Agreement in defending against her claims. She notes that Rule 8.03 of the Tennessee Rules of Civil Procedure requires a party filing a responsive pleading to set forth facts "in short and plain terms" that the party wishes to rely upon as an affirmative defense, include the defenses of payment, release and waiver. She further claims that Metro did not comply with this rule because it failed to plead those defenses in its Answer or its Amended Answer. In those pleadings, however, Metro did acknowledge the "Release and Settlement Agreement entered into between the Metropolitan Government and the Plaintiff, the content of which speaks for itself," and it presented as its "Sixth Affirmative Defense," that "Plaintiff's claims are barred by the equitable doctrines of waiver, estoppel and laches." Also, Metro's attorney argued at length during the hearing on the summary judgment motion that the settlement agreement negated one of the essential elements of Ms. Perkins' claim. Ms. Perkins' attorney did not object to the use of that argument at the hearing, but simply presented his own arguments to controvert Metro's position. In sum, even if Metro's pleadings were procedurally deficient, there are no indications that Ms. Perkins was prejudiced by that alleged deficiency.

In any event, the question is not one of sufficiency of damages. Instead, it is whether there existed, after the settlement agreement, an adverse employment action. Along this line, Ms. Perkins presents a number of additional arguments for the proposition that she is entitled to additional compensation above and beyond the agreed-upon amount in the Release and Settlement Agreement. Nonetheless, the only claims Ms. Perkins asserted in her complaint herein were for retaliatory discharge under Title VII and the ADEA, not for actions that occurred before her discharge, or for damages related to actions by Metro other than its decision to terminate her employment. It is often said that a plaintiff is the master of his own complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-399 (1987); *Grimm v. US West Communications, Inc.*, 644 N.W.2d 8, 13 (Iowa 2002); *McSharry v. Unumprovident Corp.*, 237 F. Supp. 2d 875, 879 (E.D. Tenn. 2002). Thus, Ms. Perkins should not be heard to complain if the trial court did not grant her the relief she requested for alleged injuries that fell outside the ambit of the claims set out in her complaint.

Ms. Perkins also points out that by entering into the Release and Settlement Agreement, she did not surrender all the claims she had, because the agreement specifically stated that "Ms. Perkins' complaint filed with the EEOC is not part of this agreement." Insofar as she may be referring to her separate discrimination charge before the Equal Opportunity Employment Commission that was a precedent to the lawsuit herein, we again point out that the only claims she presented in her complaint to the Circuit Court were for retaliatory discharge. Since the Release and Settlement Agreement rendered her unable to establish an essential element of her claims of retaliatory discharge, we must affirm the trial court's grant of summary judgment to Metro.

## IV.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Porsha Perkins.

_____
PATRICIA J. COTTRELL, JUDGE