IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 30, 2012

## JOHN TODD and CYNTHIA BANK-HARRIS v. SHELBY COUNTY, TENNESSEE

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000194-07      Walter C. Kurtz, Senior Judge**

---

**No. W2012-00961-COA-R3-CV - Filed December 27, 2012**

---

This is an appeal from the grant of summary judgment in favor of Appellee Shelby County. Appellants, former employees of the Shelby County Department of Homeland Security, filed suit against Appellee for retaliatory discharge under both the Tennessee Public Protection Act, Tennessee Code Annotated Section 50-1-304, and the Tennessee Public Employee Political Freedom Act, Tennessee Code Annotated Section 8-50-603. The trial court determined that Appellants had failed to meet their burden to show that the termination of their employment was causally connected to any whistleblowing activity and granted judgment in favor of Appellee. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Bradley W. Eskins and James E. King, Jr., Memphis, Tennessee, for the appellants, John Todd and Cynthia Banks-Harris.

Kim Koratsky, Memphis, Tennessee, for the appellee, Shelby County, Tennessee.

### OPINION

On April 15, 2005, Cynthia Banks-Harris was appointed, by then-Shelby County Mayor A. C. Wharton, to the position of Shelby County Grants Manager for the Appellee Shelby County Department of Homeland Security ("SCDHS"). Prior to her appointment with the SCDHS, Ms. Harris was the grants manager for the Memphis Police Department. On September 12, 2005, John Todd (together with Ms. Harris, "Plaintiffs," or "Appellants")

began volunteering as a training and exercise coordinator for the SCDHS. On October 15, 2005, Mayor Wharton appointed Mr. Todd to a full-time position as training and exercise coordinator. On April 1, 2006, Mayor Wharton appointed Mr. Todd to the position of interim Administrator for the District Eleven SCDHS when the former director, James Bolden, resigned. At all pertinent times, Ms. Harris reported directly to Mr. Todd.

The SCDHS manages grants for District Eleven and, at all times pertinent, received funding to operate from Federal and State grants. In managing its grant monies, the SCDHS first prepares a budget, which it presents to the Tennessee Emergency Management Agency ("TEMA"). TEMA then sends the budget to the Office of Domestic Preparedness ("ODP"), which is a branch of the United States Government. If ODP approves the budget, it returns it to the SCDHS, after which time the SCDHS begins the acquisition process. After the acquisition process is completed, the SCDHS submits reimbursement claims to TEMA, which in turn submits the claims to the United States Government for payment. The United States Government makes payments to TEMA, which forwards the payments to the SCDHS. The entire process is governed by the Code of Federal Regulations ("CFR").[1]

According to the complaint, throughout 2005, Ms. Harris received emails and notes from Mayor Wharton, Ms. Syblle Noble, the Assistant Chief Administrative Officer for Shelby County, and Mr. Ted Fox, the Director of the Shelby County Division of Public Works. The thrust of the correspondence was to praise Ms. Harris for her work in the administration of the SCDHS grants.

In January of 2006, Ms. Harris became concerned, allegedly due to inadequate staffing in her department, that several grants would expire. Ms. Harris determined that the SCDHS needed to request extensions of time so that grant funds for certain equipment purchases would not be lost. To this end, Ms. Harris sought assistance from Shelby County Grants Management Office employees Robin Collins and Angela Bryce. On February 2, 2006, Ms. Harris received an email from Ted Fox, who informed her that Mayor Wharton had appointed Martha Lott to spearhead the Homeland Security Grant Taskforce. Prior to her appointment, Ms. Lott was Administrator for the Metropolitan Planning Organization; in February 2006, the Shelby County Grants Management Office was included as part of the Homeland Security Grants Taskforce. The Grants Management Office was important to the SCDHS because the members were familiar with all of the federal regulations concerning grant management. In the complaint, Appellants contend that the Shelby County Grants

_____

[1] Although the parties do not dispute that the CFR governs the SCDHS's receipt and application of grant monies, the record does not indicate the exact sections of the CFR that are applicable. Regardless, this appeal does not turn on application of the statutory scheme under the CFR and so the exact citations are not necessary to its adjudication.

Management Office employees were removed from the Homeland Security Grants Taskforce. This decision, as argued by Appellants, made it difficult, if not impossible, to detect federal grant violations. The complaint avers that, on February 16, 2006, Ms. Lott addressed a memorandum to John Fowlkes, who was, at that time, the Shelby County Chief Administrative Officer, indicating that "[SCDHS] staff is still contacting TEMA when advised that all calls to TEMA would go through me." Appellants contend that Ms. Lott's memo to Mr. Fowlkes was for the purpose of prohibiting Appellants from contacting TEMA concerning any questionable grant expenditures.

Beginning in July of 2006, Ms. Harris states that she became concerned with what she perceived as illegal budget changes, false claims, misclassifications, and perhaps theft of certain grant funds. Ms. Harris brought her concerns to Ms. Lott, Mr. Todd, and Mr. Fowlkes, and also reported her findings to internal auditors, Wendy Thomas and Richard Davis. When Ms. Harris was not satisfied with Ms. Lott's response, she allegedly emailed Mayor Wharton's office with her concerns. These emails are not included in our record. Consequently, it is impossible to tell not only when they were sent or to whom, or if Mayor Wharton ever knew about the alleged correspondence. Regardless, there is no indication in the record that Mayor Wharton and Ms. Harris ever spoke directly or met to discuss Ms. Harris's concerns.

On August 30, 2006, both Mr. Todd and Ms. Harris received notification that neither of them would be re-appointed by Mayor Wharton in his second term of office.[2] On January 11, 2007, Mr. Todd filed his original complaint. On August 29, 2007, Ms. Harris filed her original complaint in the Circuit Court at Shelby County. Shelby County filed answers to both complaints, wherein it denied the material allegations made by Appellants. Appellants' original complaints were consolidated by order of January 6, 2008. On December 4, 2009, Appellants filed a joint amended complaint for injunctive relief, whistle blower retaliation and violation of the Public Employee Political Freedom Act. Shelby County filed its answer on February 25, 2010, in which it denies the material allegations made in the amended complaint. On July 8, 2011, Shelby County moved for summary judgment, which was

_____

[2] There is some question in this record as to whether failure to re-appoint Appellants constitutes a termination of their employment for purposes of either the TPPA or the PEPFA. Although, in its appellate brief, Shelby County does appear to argue that termination of employment and failure to re-appoint are not synonymous actions, from our review of the record, this argument was not espoused at the trial level, nor did the trial court make any ruling on this question. Moreover, Appellee has provided this Court with no authority from which we can conclude that failure to re-appoint is not a termination of employment, nor have we found such authority in our own research. Regardless, at the summary judgment stage, we must give all reasonable inferences in favor of the non-moving party, here Appellants. Doing so, we must infer that the failure to re-appoint the Appellants to their positions was a termination of their employment for purposes of summary judgment.

opposed by Appellants. On September 13, 2011, Appellants moved for a change of venue or, in the alternative, to appoint a special judge. The motion was granted and Senior Judge Walter Kurtz was appointed to hear the case.

A hearing on the motion for summary judgment was held on December 20, 2011. By order of January 23, 2012, Judge Kurtz granted Shelby County's motion for summary judgment and dismissed Appellants' lawsuit. In its order, the court notes that the parties accept the application of Tennessee Code Annotated Section 50-1-304(g) and the Tennessee Supreme Court's case of *Allen v. McPhee*, 240 S.W.3d 803 (Tenn. 2007) as the applicable law in the case. The court further notes that Appellants "concede that their common law retaliatory discharge claim cannot be sustained against the county because of immunity." Concerning the alleged violation of the Tennessee Public Employees Political Freedom Act, Tennessee Code Annotated Section 8-50-603 ("TPEPFA"), the court found that:

> [w]hile there is some proof in the record that some of the complaints made by the plaintiffs were reported to an elected public official, there is no proof that the elected official passed those complaints on to the authorities responsible for plaintiffs. The Court has no affidavit or deposition from that elected official, and the record would not support a finding consistent with a violation of the [TPEPFA].

The court also denied Appellants' whistleblower claim, under Tennessee Code Annotated Section 50-1-304. The court's decision was based on the following findings:

> It is the Court's opinion that the plaintiffs have made at least a showing to shift the burden. In response, the defendant has shown that a legitimate reason existed for the plaintiffs' discharges, e.g., mismanagement of the Agency. The burden then shifts back to the plaintiffs to show that the reason given by the defendant was not the true reason but a pretext for unlawful retaliation. In this context, plaintiffs have to show that their termination was based "solely" on the report of the illegal activities or an "exclusive causal relationship between [the] whistleblowing activity and [the] subsequent discharge."
>
> *                    *                    *
>
> The Court is of the opinion that plaintiffs have failed to carry this burden. . . . Even giving plaintiffs credit for the

legitimate inference to which they are entitled, they have failed to rebut defendant's explanation under the standards set forth in Tennessee Code Annotated Section 50-1-304(g) and the case law.

Appellants appeal. They raise four issues for review as stated in their brief:

1. Appellants can state a claim for violation of the Tennessee Public Protection Act.

2. The decision not to reappoint Appellants was CLOSE in time to Appellants' refusal to remain silent about illegal activities.

3. There is a causal connection between the Appellants' reports of illegal activities and their unlawful termination and Appellants have proof that the alleged legitimate reason for Appellants' termination is pretext for whistleblower retaliation.

4. Appellants can state a *prima facie* case under the Public Employee Political Freedom Act.

Because this case was adjudicated upon grant of summary judgment in favor of Shelby County, we first note that a trial court's decision on a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied." ***Mathews Partners, L.L.C. v. Lemme***, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App.2009) (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50–51 (Tenn. 1997)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." ***Id***. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Id***. at 5 (citing ***Byrd***

*v. Hall*, 847 S.W.2d 208, 215 (Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). In applying the burden shifting analysis on a motion for summary judgment, it is well settled that a court may not consider hearsay evidence. Specifically, Tennessee Rule of Civil Procedure 56.06 provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Expert opinion affidavits shall be governed by Tennessee Rule of Evidence 703.

Tenn. R. Civ. P. 56.06.

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134, at *3 (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id*. "Summary

"[j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al.*, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at \*3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)).

Concerning the respective burdens of proof that the parties must bear under the burden-shifting analysis set out above, the trial court specifically held that Tennessee Code Annotated Section 50-1-304(g) and the Tennessee Supreme Court's case of *Allen v. McPhee*, 240 S.W.3d 803 (Tenn. 2007), control. Despite this ruling, Appellant's urge this Court to apply the standard found in *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010). In *Gossett*, the Tennessee Supreme Court held that the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting analysis is not applicable to a claim for retaliatory discharge under the Tennessee Human Rights Act at the summary judgment stage "because it is incompatible with Tennessee summary judgment jurisprudence."[3] *Gossett*, 320 S.W.3d at 779; *see also id.* at 782 (reviewing the continued viability of the *McDonnell Douglas* standard in light of *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008)). Appellants' reliance on *Gossett* is misplaced because *Gossett* was abrogated by the Legislature's amendment of Tennessee Code Annotated Section 50-1-304, to add subsection (g), which provides:

> (g) In any civil cause of action for retaliatory discharge brought
> pursuant to this section, or in any civil cause of action alleging

---

[3] In *McDonnell Douglas*, the United States Supreme Court set forth the "basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Pursuant to *McDonnell Douglas*, if an employee proves a *prima facie* case of discrimination or retaliation, the employee creates a rebuttable presumption that the employer unlawfully discriminated or retaliated against him or her. *Burdine*, 450 U.S. at 254. The burden of production shifts to the employer to articulate a legitimate and nondiscriminatory or nonretaliatory reason for the action. *Id*. at 252–53. If the employer satisfies its burden, the presumption of discrimination or retaliation "drops from the case," *id*. at 255 n.10, which sets the stage for the factfinder to decide whether the adverse employment action was discriminatory or retaliatory. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983). The employee, however, "must . . . have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

In *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 556 (Tenn. 1993), our Supreme Court first adopted the *McDonnell Douglas* burden-shifting framework. Thereafter, in cases such as *Allen*, courts applied the holding in *Anderson* to cases for retaliatory discharge, thus making the *McDonnell Douglas* framework applicable at the summary judgment stage. This Court's opinion in *Gossett* ostensibly overruled the *Anderson* decision by holding that the burden-shifting framework of *McDonnell Douglas* does not apply at the summary judgment stage in Tennessee. *Gossett*, 320 S.W.3d at 785. In response to this Court's decision in *Gossett*, the General Assembly enacted Tennessee Code Annotated section 50-1-304(g).

retaliation for refusing to participate in or remain silent about illegal activities under Tennessee common law, the plaintiff shall have the burden of establishing a prima facie case of retaliatory discharge. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the plaintiff's discharge. The burden on the defendant is one of production and not persuasion. If the defendant produces such evidence, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation. The foregoing allocations of burdens of proof shall apply at all stages of the proceedings, including motions for summary judgment. The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of unlawful retaliation.

*See* 2011 Pub.Acts, c. 461, § 2.  This change became effective on June 10, 2011.

In ***Allen v. McPhee***, 240 S.W.3d 803 (Tenn. 2007), which was decided prior to the Legislature's amendment of Tennessee Code Annotated Section50-1-304, the Tennessee Supreme Court held:

[W]e hold that in order to state a prima facie case for retaliation under the THRA an employee must demonstrate: 1) that she engaged in activity protected by the THRA; 2) that the exercise of her protected rights was known to the defendant; 3) that the defendant thereafter took a materially adverse action against her; and 4) there was a causal connection between the protected activity and the materially adverse action. The burden-shifting analysis that follows the establishment of a prima facie case remains unchanged by [***Burlington Northern & Santa Fe Ry. Co. v.***]***White***[, 548 U.S. 53 (2006)]. After an employee establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the materially adverse action. ***Miller***, 122 S.W.3d at 776; *see also* ***Canitia***, 903 F.2d at 1066. If the defendant articulates such a reason, the employee, who

> bears the burden of persuasion throughout the process, must present evidence demonstrating that the articulated reason is pretextual and that the defendant's action was actually motivated by a desire to retaliate against the employee. *Miller*, 122 S.W.3d at 776; *see also Canitia*, 903 F.2d at 1066.

*Id.* at 820-21. It is clear that the burden-shifting language in *Allen* mirrors the Legislature's addition of Section 50-1-304(g). Accordingly, although we concede that the Tennessee Supreme Court's holding in *Gossett* may have initially abrogated, or at least called into question, the burden-shifting analysis set out in *Allen*, when the Legislature passed Tennessee Code Annotated Section 50-1-304(g), the *Allen* holding was ostensibly revived. The question, then, is whether the amendment to Section 50-1-304(g) is applicable to this case, which was pending at the time the amendment became effective on June 10, 2011.

The Tennessee Constitution reads "[t]hat no retrospective law, or law impairing the obligation of contracts, shall be made." Article 1, § 20. That section has uniformly been interpreted to mean that the Legislature may enact laws that have a retrospective application only so long as they do not impair the obligations on contracts or impair vested rights. *See Wynne's Lessee v. Wynne*, 32 Tenn. 404 (1852); *Hamilton County v. Gerlach*, 140 S.W.2d 1084 (Tenn. 1940). However, statutes that are considered to be procedural or remedial in nature may generally be applied retrospectively to cases pending at the time of their effective date. *Saylors v. Riggsbee*, 544 S.W.2d 609 (Tenn. 1976). The rationale is that such statutes do not affect the vested rights or liabilities of the parties, because they merely address the way in which a legal right is enforced, or provide a means for redressing wrongs and obtaining relief. *Nutt v. Champion International Corp.*, 980 S.W.2d 365 (Tenn. 1998).

As a practical matter, of course, many statutes that were enacted for purposes of procedural reform so impair vested rights that their retrospective application is not permitted. *See, e.g., Kee v. Shelter Insurance*, 852 S.W.2d 226 (Tenn. 1993) (amendments to the savings statute). There are also cases where a party has claimed that retrospective application of a statute would impair its rights, but where the courts have held that the purported effect upon those rights do not prevent them from applying the statute retrospectively. *See Morford v.Yong Kyun Cho*, 732 S.W.2d 617 (Tenn. Ct. App. 1987) (change in procedures for avoiding the jurisdictional limits of general sessions courts when appealing from that court to circuit court).

In *Ross v. Tennessee Farmers Mutual Insurance*, 592 S.W.2d 897 (Tenn. Ct. App. 1979) , this Court articulated the following formula:

> [R]emedial or procedural statutes apply retrospectively not only

to causes of action arising before such acts become law, **but to all suits pending when the legislation takes effect, unless the legislature indicates a contrary intention or immediate application would produce an unjust result**. . . . The usual test of the 'substantive' or 'procedural' character of a statute for this purpose is to determine whether or not application of the new or amended law would disturb a vested right or contractual obligation.

*Id.* at 898 (emphasis added). Applying the foregoing principles to the instant case, it is clear that the amendment to Tennessee Code Annotated Section 50-1-304(g) was procedural in nature, in that the amendment clarifies and outlines the procedural burden-shifting applicable to TPPA cases; however, this amendment does not disturb any vested right or contractual obligation that Appellants might have. The hearing on the motion for summary judgment in this case was held on December 20, 2011 and the order granting summary judgment was entered on January 23, 2012. Thus, the issues in this case were decided well after the effective date of Tennessee Code Annotated Section 50-1-304. Accordingly, we conclude that Tennessee Code Annotated Section 50-1-304(g) and *Allen*, to the extent it mirrors that statute, are applicable to the instant case.

With the foregoing parameters in mind, we turn to address Appellants' issues.

## I. Tennessee Public Protection Act Claims

The Tennessee Public Protection Act, Tennessee Code Annotated Section 50-1-304, also known as the "Whistleblower Act" ("TPPA"), was enacted as part of the Tennessee Public Protection Act of 1990. 1990 Tenn. Pub. Acts 771. The TPPA provides, in pertinent part, as follows:

(a) As used in this section:

(1) "Employee" includes, but is not limited to:

(A) A person employed by the state or any municipality, county, department, board, commission, agency, instrumentality, political subdivision or any other entity of the state;

\*                          \*                          \*

(C) A person who receives compensation from the federal

-10-

government for services performed for the federal government, notwithstanding that the person is not a full-time employee of the federal government;

*           *           *

(2) "Employer" includes, but is not limited to:

(A) The state or any municipality, county, department, board, commission, agency, instrumentality, political subdivision or any other entity of the state;

*           *           *

(3) "Illegal activities" means activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

(b) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

*           *           *

(d)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

Tenn. Code Ann. § 50-1-304.

The provisions of this statute create a narrowly crafted exception to the long-established common law employment-at-will doctrine, which provides generally that "an employment contract for an indefinite term is terminable at the will of either the employer or the employee for any cause or for no cause." **Guy v. Mut. of Omaha Ins. Co.**, 79 S.W.3d 528, 535 (Tenn. 2002); *see also* **Mason v. Seaton**, 942 S.W.2d 470, 474 (Tenn. 1997) ("Employment-at-will is the fundamental principle controlling the relationship between employers and employees . . . . However, even under the common law, an employee is protected from discharge in retaliation for attempting to exercise a statutory or

-11-

constitutional right, or in violation of a well-defined public policy.").

A Whistleblower Act claimant has the burden of proving the following four elements to prevail on his or her statutory retaliatory discharge claim:

> (1) the plaintiff was an employee of the defendant;
> (2) the plaintiff refused to participate in or remain silent about illegal activity;
> (3) the defendant employer discharged or terminated the plaintiff's employment; and
> (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

*See Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342, 344 (Tenn. Ct. App. 1997). In this case, the only element in dispute is element (4)—whether either Mr. Todd or Ms. Harris's employment was terminated solely for his or her refusal to participate in, or remain silent about, the alleged illegal activity, including illegal budget changes, false claims, misclassifications, and/or theft of grant monies.

In *Guy*, this Court noted that "under the [Whistleblower Act], the plaintiff must demonstrate an exclusive causal relationship between his [or her] whistleblowing activity and his [or her] subsequent discharge." 79 S.W.3d at 535; *see also Collins v. AmSouth Bank*, 241 S.W.3d 879, 884 (Tenn. Ct. App. 2007) (observing that "the primary difference between the common law and statutory [retaliatory discharge] claims is that, to benefit from statutory protection, an employee must demonstrate that his or her refusal was the **sole reason** for his or her discharge") (emphasis in original); *Darnall v. A+ Homecare, Inc*., No. 01A01-9807-CV0034, 1999 WL 346225, at *8 (Tenn. Ct. App. June 2, 1999) (Koch, J., concurring) ("The General Assembly's choice of the term 'solely' means that an employee can prevail with a Tenn. Code Ann. § 50-1-304 claim only if he or she can prove that his or her refusal to participate in or to remain silent about illegal activities was the only reason for the termination."). The burden on plaintiff in this regard is high. As noted by the Tennessee Supreme Court in *Sykes v. Chattanooga Housing Auth.*, 343 S.W.3d 18 (Tenn. 2011):

> By requiring a plaintiff employee to show that he or she was "discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities," the legislature has chosen to enact a stringent standard and set the bar high for recovery under a retaliatory discharge claim pursuant to the Whistleblower Act.

*Id*. at 26–27.

As argued in their brief, Appellants contend that they have shown a *prima facie* case for retaliatory discharge under the TPPA and, specifically, have demonstrated that retaliation was the sole reason for the termination of their employment based upon two arguments. First, Appellants contend that, because the decision not to reappoint them was close in time to Appellants' refusal to remain silent about illegal activities, this demonstrates a causal connection between the whistleblowing and the termination of their employment. Second, Appellants contend that they have shown that the alleged legitimate reason for Appellants' termination, i.e., problems within the department, is pretext for whistleblower retaliation. We will to address each of these arguments in turn.

### A. Causal Relationship based upon temporal proximity of termination of employment to whistleblowing activities

As noted in *Allen*, close temporal proximity between a "complaint and a materially adverse action" may be sufficient to establish causation, at least "for the purpose of stating a *prima facie* case" of retaliation. *Allen*, 240 S.W.3d at 823. In his deposition, Mr. Todd states that his first "whistleblowing" action was a letter, which he sent to the Office of the Inspector General for the U.S. Department of Homeland Security on July 14, 2006. As noted above, at about the same time, Ms. Harris contacted Mayor Wharton's office to voice her concerns. Ms. Harris also sent letters to outside agencies; however, it is undisputed that these letters were sent anonymously and that she did not reveal her identity to these agencies until **after** her employment ended.

According to Mayor Wharton's testimony, he began to formulate the idea of replacing the team at the SCDHS, including the Appellants, after meeting with the Homeland Security Council in January of 2006:

> Q [to Mayor Wharton]. [W]hat is the basis as to the reason why [Mr. Todd and Ms. Harris's employment was not] continued in Shelby Government.
>
> A. It was no big secret that the office [i.e., the SCDHS] was having a number of difficulties . . . . One thing that does stick out in my mind is that . . . there were a number of grants that were about to expire, and the information had been communicated to me that we didn't really have any grants in jeopardy and that no extensions are required.
> And I was presiding over a meeting out at the [T]EMA

one day and. . .one of the office[rs] stood up and said something to the effect, you need to get an extension . . . and I just said. . . . We're losing faith through the State of Tennessee . . . .

But there's just been a litany of difficulties with the [SCDHS] from Bolden and then to the time that Mr. Todd was in there, and it was just a matter of my concluding that the only way I would get the same turnaround is to bring in somebody who would just do a total makeover.

Mayor Wharton then testified that the problems within the SCDHS were cumulative in that they built up over an extended period of time. However, Mayor Wharton testified that, as a result of the meeting with TEMA, and beginning around February of 2006, he decided to appoint the task force, headed by Ms. Lott, to correct the problems within the SCDHS. The Appellants were not reappointed in August of 2006, which was immediately before Mayor Wharton's new term in office began. Concerning Appellants' argument that the termination of their employment was proximate to their whistleblowing activities, the record clearly indicates that the decision not to reappoint Appellants was not spontaneous, but was the result of Mayor Wharton's goal of overhauling the department, which process began much earlier that year, in January or February of 2006. Accordingly, the record does not support Appellants' contention that the decision to terminate their employment was made in close proximity, or as a direct result, of their whistleblowing activities. Rather, the decision, and timing of the termination, appears to be the culmination of several months of planning and actions consistent with Mayor Wharton's ultimate goal of a complete overhaul of the department.

In addition, Appellants' response to Appellee's statement of undisputed facts in support of their motion for summary judgment indicates that Mayor Wharton's office did not know about the whistleblowing activities until after the decision to terminate Appellants' employment was made. In response to undisputed fact number 10, Appellants admit that the decision not to reappoint them was made by Mayor Wharton on August 24, 2006, at approximately 2:00 p.m. According to their response to statement of fact number 9, Mr. Todd first informed Shelby County's internal auditors, on August 24, 2006, that he had reported alleged wrongdoing to the State. In his deposition, Mr. Tommy Cates, head of the auditing department, testified that he received the auditors' report within hours of its completion, on August 24, 2006. In further response to factual statement number 9, Appellants state that Mr. Cates prepared and delivered a report, which contained information about Mr. Todd's reporting of the alleged wrongdoing, to the office of then Shelby County CAO Mr. Fowlkes the following day, i.e., August 25, 2006. Mr. Cates testifies that he left the report with Mr. Fowlkes's secretary; however, there is no indication in the record that Mr. Fowlkes actually received the report that Mr. Cates delivered, or that he read it. However,

even if we favor Appellants in reading this fact, as we must do at the summary judgment stage, and assume that Mr. Fowlkes received Mr. Cates's report on August 25, 2006 (which is the earliest date he could have received it, according to Mr. Cates's testimony), Appellants have only established that Appellee was aware of the whistleblowing activity **after** Mr. Theodore Fox, the then Shelby County Director of Public Works, had recommended that Appellants not be reappointed, and only **after** Mayor Wharton had made the decision not to reappoint them. In short, Appellants have presented no evidence from which we could conclude that Mayor Wharton, or Messrs. Fowlkes or Fox knew, or could have known, about Appellants' whistleblowing activities before the auditors' report was delivered to Mr. Fowlkes's office on August 25, 2006. As discussed above, under the TPPA, Appellants have the burden to show an exclusive causal relationship between their reporting of alleged wrongdoing and Mayor Wharton's decision not to reappoint them. By Appellants' own responses to Appellee's statement of undisputed facts, it is clear that Mayor Wharton did not know about Appellants' reporting before he made the decision not to reappoint them. However, as noted above, Ms. Harris testified that she sent emails to Mayor Wharton's office. Despite the fact that these emails are not in our record, and despite the fact that there is no indication as to when, or to whom, these emails were sent, at the summary judgment stage, we must give Ms. Harris all reasonable inferences in her favor. Doing so, we must conclude that the emails did provide some notice to someone on Mayor Wharton's staff. Even with this inference in Ms. Harris's favor, she nonetheless has failed to show that any correspondence with Mayor Wharton's office supports a finding that knowledge of her whistleblowing activities was the sole reason for the termination of her employment. We now turn to specifically address that issue.

**B.  Causal connection based upon pretext**

Even if Appellants' could demonstrate that Mayor Wharton knew about the whistleblowing activities prior to his decision not to reappoint Appellants, Appellants have, nonetheless, failed to meet their burden to demonstrate that the alleged reason for the termination of their employment, i.e., problems within the SCDHS, was pretext. In order to state a *prima facie* case under the TPPA, Appellants must prove "an exclusive causal relationship between [their] refusal to participate in or remain silent about illegal activities and [the] termination [of their employment]." ***Franklin v. Swift v. Transp. Co., Inc.***, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006).

As discussed above, Mayor Wharton testified that, at a meeting with the Homeland Security Council in January of 2006, he first became aware of several issues indicating that the current SCDHS team, which included Appellants, was not functioning properly. Mayor Wharton concluded that the team needed to be replaced and set about that task. Mayor Wharton first appointed a task force to work on grants. As part of this task force, Ms. Harris

was replaced in her function as grants supervisor. From the record, Mayor Wharton's decision was based upon concerns about administration of grants within the SCDHD, and the lack of confidence in the department, as expressed by TEMA at the meeting referred to in Mayor Wharton's testimony, *supra*. Mayor Wharton testified that he, and members of his administration, were concerned about Appellants' overall performance and the imminent loss of some $19 million in grant funding.

Once Appellee has articulated a legitimate, non-discriminatory reason for its decision not to reappoint Appellants, the burden then shifts to Appellants to produce evidence that the proferred reason is pretext. *Allen*, 240 S.W.3d at 823. We have reviewed the record, and conclude that Appellants have not met this burden. When asked, in his deposition, who was responsible for making the decision to not reappoint him, Mr. Todd testifies that: "I have no idea who all was involved in that [decision]." Likewise, when Ms. Harris was asked whether she had a witness who could testify that Mayor Wharton's reason for not reappointing her was because of her reporting illegal activity, Ms. Harris responded "No." She further admitted that she had no documentation, or personal knowledge, to show that Mayor Wharton's decision was based on her whistleblowing activities. In fact, and as noted above, the record indicates that Ms. Harris's reports were made anonymously until **after** she was not reappointed. Based upon the record, Appellants' have failed to meet their burden to produce evidence to rebut the legitimate reason for the termination of their employment, i.e., problems within the SCDHD, and specifically to show that this reason was pretext.

In summary, to successfully shift the burden of production to the nonmoving party at the summary judgment stage, Shelby County must either produce or identify evidence "that affirmatively negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Mills v. CSX Transp., Inc*., 300 S.W.3d 627, 631 (Tenn. 2009). To this end, Shelby County challenges Appellants' ability to establish the "sole causation" element of their claims. At trial, Mr. Todd and Ms. Harris must show that Shelby County terminated their employment solely for their refusal to participate in or remain silent about the alleged illegal activity. We have carefully reviewed the evidence in the record, in the light most favorable to the nonmovants, Mr. Todd and Ms. Harris, and we conclude that Shelby County has produced and/or identified evidence that neither Mr. Todd nor Mr. Harris can establish the essential element of sole causation. The undisputed evidence in the record establishes valid and legitimate reasons for Shelby County to have terminated both Appellants' employment. Thus, Shelby County has successfully shifted the burden to Mr. Todd and Ms. Harris to demonstrate a genuine issue of material fact regarding whether the decision to terminate their employment was solely due to their protected whistleblowing activity. Neither Mr. Todd nor Ms. Harris has produced or identified sufficient evidence to show an issue of material fact on this challenging element of sole causation. Even viewing all the evidence in the light most

favorable to Mr. Todd and Ms. Harris, a reasonable juror could not conclude that the sole reason for the termination of Appellants' employment was their refusal to participate in or remain silent about the alleged illegal activities in this case. The trial court's summary judgment in favor of Shelby County on Appellants' TPPA claim is affirmed.

## II. Tennessee Public Employees Political Freedom Act Claims

The Tennessee Public Employee Political Freedom Act, Tennessee Code Annotated Section 8-50-603 ("PEPFA"), provides:

> (a) It is unlawful for any public employer to discipline, threaten to discipline or otherwise discriminate against an employee because such employee exercised that employee's right to communicate with an elected public official.

> (b) If the court of competent jurisdiction determines that a public employer has disciplined, threatened to discipline or otherwise discriminated against an employee because such employee exercised the rights provided by this part, such employee shall be entitled to treble damages plus reasonable attorney fees.

In interpreting this statute, this Court has noted that "[o]bviously, the word 'because' in T.C.A. §8-50-603(b) requires that the discriminatory actions of the public employer must have resulted from the public employee's communication with an elected officer." *Todd v. Jackson*, 213 S.W.3d 277, 280 (Tenn. Ct. App. 2006) (quoting *Pewitt v. Buford*, No. 01A01-9501-CV-00025, 1995 WL 614327, at *5 (Tenn. Ct. App. Oct. 20, 1995).

From the record, it appears that Ms. Harris never communicated her concerns to an elected official. Although Ms. Harris asserts that she emailed Mayor Wharton's office, as discussed above, there is no indication that the emails were sent directly to Mayor Wharton, or that he ever read or knew about them. In addition, Ms. Harris admits in her deposition that she had no direct contact with any elected official. Ms. Harris states that she did contact the State of Tennessee Comptroller about alleged wrongdoing. However, as noted by Appellee in its brief, the Tennessee Comptroller is not an elected official. Rather, the Comptroller is appointed pursuant to Article 7 §3 of the Tennessee Constitution, stating that "[t]here shall be a Treasurer or Treasurers and a Comptroller of the Treasury **appointed** for the State, by the joint vote of both houses of the General Assembly. . . ." (emphasis added). As noted above, Tennessee Code Annotated Section 8-50-603 prohibits retaliation for communication with an **elected public official**. Because Ms. Harris has provided no evidence to suggest that

she communicated with such elected official, she cannot sustain a cause of action under the PEPFA.

Mr. Todd, on the other hand, does claim to have talked to then Shelby County Commissioner John Willingham about his concerns. The only evidence of that conversation is Mr. Todd's own testimony. Taking Mr. Todd's testimony as true, which we must do at the summary judgment stage, and allowing that Mr. Todd did, in fact, discuss his concerns with Commissioner Willingham, this fact, alone, is not sufficient to make out a *prima facie* case under the PEPFA. As noted above, not only does the plaintiff have to show that there was communication with an elected official, but the plaintiff also has the burden to show that the retaliatory discharge was **because** of the communication with the elected official. In short, there must be some evidence of a causal connection between the communication and the termination of employment. Here, there is no evidence that the decision-maker, i.e., Mayor Wharton, knew anything about Mr. Todd's conversation with Commissioner Willingham. In the absence of some evidence from which we could infer that Mayor Wharton knew, or should have known, about Mr. Todd's conversation with Commissioner Willingham, Mr. Todd cannot sustain his PEPFA claim.

In their brief, Appellants argue that "there is nothing in the [PEPFA] statutory text or case law interpreting the statute that requires a plaintiff who reported behavior to an elected official to also prove that the elected official reported the conduct back to authorities." Although we concede that the plain language of the statute does not specifically state that a *prima facie* element of a PEPFA claim is proof that the elected official reported the whisleblowing activities, a plaintiff must, nonetheless, "show that the communication with an elected official was a substantial or motivating factor in the discriminatory action taken by the employer." ***Gooch v. City of Pulaski***, No. M2006-00451-COA-R3-CV, 2007 WL 969398, at \*7 (Tenn. Ct. App. March 30, 2007). This is the shortfall in the instant case. Ms. Harris has not shown that she ever talked to an elected official; Mr. Todd has not shown that the conversation he had with Mr. Willingham had anything to do with Mayor Wharton's decision to terminate his employment. Accordingly, the trial court correctly dismissed the Appellants' PEPFA claims.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for all further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed to the Appellants, John Todd, Cynthia Banks-Harris, and their surety.

_____

J. STEVEN STAFFORD, JUDGE