# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 10, 2014 Session

**IN RE A TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS BY LAUREL J. SHANKS**

**Appeal from the Circuit Court for Hamblen County**
**No. 13CV101      Thomas J. Wright, Judge**

_____

**No. E2013-01702-COA-R3-CV-FILED-MAY 27, 2014**

_____

The respondent financial services company appeals the trial court's entry of an order approving a transfer of the payee's structured settlement payment rights to the petitioner financial services company and its assignee, pursuant to Tennessee's Structured Settlement Protection Act ("SPPA"). *See* Tenn. Code Ann. §§ 47-18-2601 to 2607 (2013). The trial court found that the transfer at issue met all statutory requirements. On appeal, the respondent company raises the issue of whether the transfer order contravened two prior court orders partially transferring the payee's structured settlement payment rights to the respondent and if so, whether this contravened applicable law under the SSPA. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Jason H. Long, Knoxville, Tennessee, for the appellant, JG Wentworth Originations, LLC.

Paul W. Kruse, Chris Raybeck, and Olatayo O. Atanda, Nashville, Tennessee; and E. John Gorman, Houston, Texas, *pro hac vice*, for the appellee, RSL Funding, LLC.

## OPINION

### I. Factual and Procedural Background

The essential facts underlying this action are undisputed. The structured settlement rights at issue originated with a settlement agreement entered by the parents of Laurel J.

Shanks on her behalf on June 9, 1994, when Ms. Shanks was a minor. The settlement was for personal injuries Ms. Shanks suffered from an automobile collision. To fund the settlement, the structured settlement obligor, Keyport Life Insurance Company ("Keyport"), purchased an annuity requiring the annuity issuer, Liberty Life Assurance Company of Boston ("Liberty"), to make periodic payments to Ms. Shanks.

On May 8, 2008, the Anderson County Circuit Court entered an order approving a transfer of partial structured settlement payment rights from Ms. Shanks to the respondent, JG Wentworth Originations, LLC ("Wentworth"), as described in a Purchase Agreement incorporated into the order.[1] According to the order, Wentworth was required to pay Ms. Shanks $16,500 as a lump sum in return for annual payments of $5,000 from July 1, 2008, through July 1, 2010, and annual payments of $12,500 from July 1, 2015, through July 1, 2016. All periodic payments from Liberty were to be made to Wentworth, which would in turn forward any unassigned portion of the payments to Ms. Shanks.

On November 24, 2008, the Cocke County Circuit Court entered an order approving a second transfer of partial structured settlement rights from Ms. Shanks to Wentworth, as described in a second Purchase Agreement incorporated into the order. This order transferred additional payments, requiring Wentworth to pay Ms. Shanks $16,750 as a lump sum in return for one payment of $5,000 due on July 1, 2009; one payment of $5,000 due on July 1, 2010; one payment of $6,250 due on July 1, 2015; one payment of $6,250 due on July 1, 2016; one payment of $12,500 due on July 1, 2017; one payment of $15,000 due on July 1, 2018; and one payment of $20,000 due on July 1, 2019. As with the previous order, all periodic payments from Liberty were made to Wentworth, which would forward any unassigned portions to Ms. Shanks.

On May 20, 2013, the petitioner, RSL Funding, LLC ("RSL"), filed an application in the Hamblen County Circuit Court ("trial court"), requesting approval of a Transfer Agreement executed by RSL and Ms. Shanks ("Transfer Agreement"). According to the Transfer Agreement, RSL would pay Ms. Shanks a lump sum of $40,000 for the remaining portions of her periodic payments that were not assigned to Wentworth. These consisted of one payment of $6,250 due on July 1, 2015; one payment of $6,250 due on July 1, 2016; one payment of $12,500 due on July 1, 2017; one payment of $15,000 due on July 1, 2018; and one payment of $20,000 due on July 1, 2019.

On May 28, 2013, RSL filed an amendment to its petition, requesting that the trial court add Wentworth as an interested party and "prior assignee." On June 12, 2013,

---

[1]The 2008 transfer orders and agreements list 321 Henderson Receivables, now known as JG Wentworth, as the transferee.

Wentworth subsequently filed a motion to intervene and an objection, asserting that approval of the Transfer Agreement would contravene the court orders entered previously by the other courts and would impose upon Wentworth obligations and liabilities to which it did not contract.

The trial court granted Wentworth's motion to intervene. Following a bench hearing, the trial court approved the Transfer Agreement, finding that it met all requirements of the SSPA and was in Ms. Shanks's best interest. The court specifically overruled Wentworth's objection, finding that the Transfer Agreement did not contravene applicable law under the SSPA or impose undue obligations upon Wentworth. The court entered an Order of Transfer on June 19, 2013, incorporating the Transfer Agreement and also ordering Wentworth to forward the previously unassigned portions of the periodic payments to the designated assignee of RSL, Extended Holdings, Ltd. ("Extended Holdings"), as it would have to Ms. Shanks under the previous court orders. Wentworth timely appealed.

## II. Issue Presented

Wentworth presents one issue on appeal, which we restate as follows:

> Whether the trial court erred by entering an order transferring structured settlement payments from Ms. Shanks, as payee, to RSL and its assignee upon the court's finding, *inter alia*, that the order did not contravene applicable law or two previous orders of other courts partially transferring Ms. Shanks's structured settlement payment rights to Wentworth.

## III. Standard of Review

The issue raised is primarily a question of law, specifically involving interpretation of Tennessee's SPPA. *See* Tenn. Code Ann. §§47-18-2601 to 2607. We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *See Cunningham v. Williamson Cnty. Hosp. Dist.*, 405 S.W.3d 41, 43 (Tenn. 2013) (citing *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 366 (Tenn. 2012)). Our Supreme Court has summarized the principles involved in statutory construction as follows:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General

-3-

Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

To the extent that we need also review the factual findings of the trial court, we presume those findings to be correct and will not overturn them unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Morrison v. Allen*, 338 S.W.3d 417, 425-26 (Tenn. 2011). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006).

IV. Transfer Order Not in Contravention of Applicable Law or Prior Orders

Wentworth contends that the trial court erred by entering the Order of Transfer because the Order violated the previous orders entered by the Anderson County and Cocke County Circuit Courts, which Wentworth argues constitute "applicable law" under Tennessee Code Annotated § 47-18-2603 of Tennessee's SSPA. RSL contends that the transfer at issue does not contravene applicable law or the prior court orders. We agree with RSL.

Pursuant to Tennessee's SSPA, a "payee," such as Ms. Shanks in the instant action, is defined as "an individual who is receiving tax-free damage payments under a structured settlement and proposes to make a transfer of payment rights thereunder . . . ." *See* Tenn. Code Ann. § 47-18-2602(7). Tennessee is one of a majority of states to have enacted an SSPA in an effort to protect payees from "bargaining away their interests in structured

-4-

settlement agreements for less than adequate consideration." *See In re Sparks*, No. 03-38563L, 2005 WL 1669609 (Bankr. W.D. Tenn. July 14, 2005); *see generally*, Jay M. Zitter, Annotation, *Construction and Application of State Structured Settlement Protection Acts*, 27 A.L.R.6th 323 (2007). Enacted in 2000, Tennessee's SSPA, similar to those enacted in other states, is based on a model SSPA written with the contributions of, *inter alia*, the National Association of Settlement Purchasers. *See Symetra Life Ins. Co.* v. *Rapid Settlements, Ltd.*, 657 F. Supp. 2d 795, 799-803 (S.D. Tex. 2009) ("*Symetra II*"); Zitter, 27 A.L.R. 6th at 323.[2] The SSPAs typically, as Tennessee's does, "require the factoring company to disclose fully the effects of the proposed transfer and require a state-court judge to decide whether to approve the transfer as in the best interests of the [payee]." *See Symetra II*, 657 F. Supp. 2d at 799; *see also* Tenn. Code Ann. § 47-18-2603; Zitter, 27 A.L.R. 6th at 323. The financial companies purchasing structured settlement payment rights, such as Wentworth and RSL, are often described as "factoring" companies, referring to the "factoring discount" amount they accept in exchange for acquisition of a payee's structured settlement payment rights. *See* 26 U.S.C.A. § 5891(a), (c)(3)-(4) (2002) (excepting structured settlement factoring transactions approved by a qualified state order from imposition of a federal tax that would otherwise be equal to forty percent of the factoring discount).[3]

In Tennessee, the requirements for a transfer of structured settlement payment rights are delineated in Tennessee Code Annotated § 47-18-2603, which provides:

> No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been authorized in advance in a final order of a court of competent jurisdiction or a responsible administrative authority, and complies with all of the following:

---

[2]The district court in *Symetra II* noted in 2009 that forty-seven states had enacted an SSPA based on the model statute. *Symetra II* at 657 F. Supp. 2d at 799 n.1. Since that time, a forty-eighth state, Vermont, has also enacted an SSPA, which took effect on July 1, 2012. *See* Vt. Stat. Ann. 9 § 2480dd (2013). Our research shows that to date, neither New Hampshire nor Wisconsin has enacted an SSPA.

[3]26 U.S.C.A. § 5891(c)(4) defines "factoring discount" as:

an amount equal to the excess of–

(A)     the aggregate undiscounted amount of structured settlement payments being acquired in the structured settlement factoring transaction, over

(B)     the total amount actually paid by the acquirer to the person from whom such structured settlement payments are acquired.

(1)     The Transfer complies with the requirements of this part and will not contravene other applicable law;

(2)     Not less than ten (10) days prior to the date on which the payee executes the transfer agreement, the transferee has provided to the payee a disclosure statement in bold type, no smaller than fourteen (14) points, setting forth:

   (A)     The amounts and due dates of the structured settlement payments to be transferred.

   (B)     The aggregate amount of such payments;

   (C)     The discounted present value of such payments, together with the discount rate used in determining such discounted present value;

   (D)     The gross amount payable to the payee in exchange for such payments;

   (E)     An itemized listing of all brokers' commissions, service charges, application fees, processing fees, closing costs, filing fees, administrative fees, notary fees and other commissions, fees, costs, expenses and charges, and a good faith estimate of all legal fees and court costs payable by the payee or deductible from the gross amount otherwise payable to the payee;

   (F)     The net amount payable to the payee after deduction of all commissions, fees, costs, expenses and charges described in subdivision (2)(E); and

   (G)     The amount of any penalty and the aggregate amount of any liquidated damages (inclusive of penalties) payable by the payee in the event of any breach of the transfer agreement by the payee;

(3)     The payee has established that the transfer is fair and reasonable and in the best interest of the payee;

(4)     The payee has been advised by the transferee, in writing, to seek independent professional advice regarding the financial, legal and tax implications of the transfer; and

(5)     The transferee has given written notice of the transferee's name, address and taxpayer identification number to the annuity issuer and the structured settlement obligor and has filed a copy of such notice with the court or responsible administrative authority.

Circuit courts in Tennessee have nonexclusive jurisdiction over applications for authorization of transfers of structured settlement payment rights. Tenn. Code Ann. § 47-18-2604(a).

At specific issue in the instant action is the statutory requirement that the "transfer . . . will not contravene other applicable law." *See* Tenn. Code Ann. § 47-18-2603(1); -2606 ("Nothing contained in this part shall be construed to authorize any transfer of structured settlement payment rights in contravention of applicable law or to give effect to any transfer of structured settlement payment rights that is invalid under applicable law."). The SSPA defines "applicable law" as "state or federal statutes of the United States." Tenn. Code Ann. §47-18-2602(2). Because Tennessee circuit courts are granted the authority by statute to approve proposed transfers of structured settlements, *see* Tenn. Code Ann. § 47-18-2604(a), Wentworth argues that the orders previously entered by the Anderson County Circuit Court and the Cocke County Circuit Court are "applicable law" under the statutory definition.

Prior to the filing of this opinion, Tennessee state appellate courts had not yet been called upon to interpret provisions of the SSPA. One federal bankruptcy court decision from the Western Division of Tennessee does address a debtor's/decedent's right to payment under a transfer order qualified under the Tennessee SSPA as property of the debtor's/decedent's estate. *See In re Sparks*, 2005 WL 1669609 at *4-5 (also explaining the background and basic requirements of Tennessee's SSPA). The court in *Sparks* does not address the requirement of adhering to applicable law. *Id.* We note also that the *Sparks* order is a federal bankruptcy court decision and as such, is not binding on this Court. *See Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 785 n.3 (Tenn. 2010) (explaining that even opinions of federal intermediate courts are "only persuasive authority and not binding" on Tennessee state courts).

Tennessee's SSPA does not include a definition of "contravene," but we note the plain meaning as "to violate or infringe" or "to be contrary to." *See* BLACK'S LAW DICTIONARY 352 (8th ed. 2004); *see, e.g., Planned Parenthood of Middle Tenn. v. Sundquist*, 38 S.W.3d 1, 8 (Tenn. 2000) ("We may only invalidate a statute when it contravenes either the federal or state constitution."). The Tennessee General Assembly did, however, take pains to define

"applicable law" to the SSPA as "state or federal statutes of the United States." Tenn. Code Ann. § 47-18-2602(2). We are unconvinced, as the trial court was, by Wentworth's argument that the legislature intended something other than this clear and straightforward definition. *See Rich v. Tenn. Bd. of Med. Examiners*, 350 S.W.3d 919, 927 (Tenn. 2011) (applying the "canon of construction 'expressio unius est exclusio alterius,' which holds that the expression of one thing implies the exclusion of others . . . ."); *cf. In re Rapid Settlements LTD's Application for Approval of Structured Settlement Rights*, 136 P.3d 765, 772 (Wash. Ct. App. 2006) (explaining that Washington's SSPA explicitly provides that an order transferring structured settlement payment rights in that state must "not violate the order of any court") (citing Wash. Rev. Code § 19.205.030(3)). We stress again that our primary objective when interpreting statutes is to "carry out legislative intent without broadening or restricting the statute beyond its intended scope." *See In re Estate of Tanner*, 295 S.W.3d at 613.

Wentworth also argues that because 26 U.S.C.A. § 5891 defines a transfer order qualifying for the federal tax exception in part as one that "does not contravene any Federal or State statute or the order of any court or responsible administrative authority," any contravention of a prior transfer order would contravene applicable federal law. *See* 26 U.S.C.A. § 5891(b)(2)(A)(i). 26 U.S.C.A. § 5891 provides in pertinent part:

> **(a)** **Imposition of tax.**–There is hereby imposed on any person who acquires directly or indirectly structured settlement payment rights in a structured settlement factoring transaction a tax equal to 40 percent of the factoring discount as determined under subsection (c)(4) with respect to such factoring transaction.
>
> **(b)** **Exception for certain approved transactions**–
>
> > **(1)** **In general.**–The tax under subsection (a) shall not apply in the case of a structured settlement factoring transaction in which the transfer of structured settlement payment rights is approved in advance in a qualified order.
> >
> > **(2)** **Qualified order.**–For purposes of this section, the term "qualified order" means a final order, judgment, or decree which–
> >
> > > **(A)** finds that the transfer described in paragraph (1)–

**(i)** does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and

**(ii)** is in the best interest of the payee, taking into account the welfare and support of the payee's dependents, and

**(B)** is issued–

**(i)** under the authority of an applicable State statute by an applicable State court, or

**(ii)** by the responsible administrative authority (if any) which has exclusive jurisdiction over the underlying action or proceeding which was resolved by means of the structured settlement.

We agree that the plain meaning of 26 U.S.C.A. § 5891(b)(2)(A)(i) is that a transfer order contravening a prior state court order would not qualify for the tax exception delineated by that federal statute. We do not determine, however, that such an unqualified order would contravene the federal statute; it would simply fail to qualify for the exception. The resultant financial consequence of such a failure to qualify the order would be borne by the factoring company acquiring the payee's structured settlement payment rights, in this case, RSL. *See* 26 U.S.C.A. § 5891(a), (b)(2)(A)(i). We conclude that in order for a transfer order to contravene applicable law, pursuant to Tennessee Code Annotated §§ 47-18-2603(1) and -2606, it must contravene a state or federal statute of the United States, pursuant to Tennessee Code Annotated § 47-18-2602(2). Because a prior circuit court order does not constitute a statute, it does not constitute "applicable law" under Tennessee's SSPA.

Moreover, upon a thorough review of the record, we determine that the transfer order at issue does not contravene the prior court orders. In explaining this conclusion, it is helpful to track the portion of periodic payments not assigned and therefore retained by Ms. Shanks upon entry of each order. The May 8, 2008 Anderson County Circuit Court order approved a transfer from Ms. Shanks to Wentworth of the following periodic payment portions:

- July 1, 2008     $5,000     (unassigned portion: $10,000)
- July 1, 2009     $5,000     (unassigned portion: $10,000)
- July 1, 2010     $5,000     (unassigned portion: $10,000)

| | | | |
|---|---|---|---|
| • | July 1, 2015 | $12,500 | (unassigned portion: $12,500) |
| • | July 1, 2016 | $12,500 | (unassigned portion: $12,500)[4] |

Pursuant to the May 2008 order, Wentworth was obligated to forward the unassigned portions noted above to Ms. Shanks upon receipt of the periodic payments from the annuity issuer.

The November 24, 2008 Cocke County Circuit Court order subsequently approved a transfer from Ms. Shanks to Wentworth of the following previously unassigned payment portions:

| | | | |
|---|---|---|---|
| • | July 1, 2009 | $5,000 | (unassigned portion: $5,000) |
| • | July 1, 2010 | $5,000 | (unassigned portion: $5,000) |
| • | July 1, 2015 | $6,250 | (unassigned portion: $6,250) |
| • | July 1, 2016 | $6,250 | (unassigned portion: $6,250) |
| • | July 1, 2017 | $12,500 | (unassigned portion: $12,500) |
| • | July 1, 2018 | $15,000 | (unassigned portion: $15,000) |
| • | July 1, 2019 | $20,000 | (unassigned portion: $20,000) |

As before, Wentworth was obligated to forward the remaining unassigned payment portions to Ms. Shanks upon receipt from the annuity issuer.

In the Order of Transfer at issue, entered on June 19, 2013, the trial court approved a transfer from Ms. Shanks to RSL and its assignee of the following previously unassigned payment portions:

| | | | |
|---|---|---|---|
| • | July 1, 2015 | $6,250 | (unassigned portion: $0) |
| • | July 1, 2016 | $6,250 | (unassigned portion: $0) |
| • | July 1, 2017 | $12,500 | (unassigned portion: $0) |
| • | July 1, 2018 | $15,000 | (unassigned portion: $0) |
| • | July 1, 2019 | $20,000 | (unassigned portion: $0) |

Upon entry of this last order, Ms. Shanks no longer retained ownership of any portion of her periodic payments from the structured settlement.

It is undisputed that at the time Ms. Shanks entered the Transfer Agreement with RSL, she owned the rights to the periodic payment portions she had not previously assigned to

---

[4]Unassigned portions are taken from a "Breakdown of Annuity Payments," attached to the Order of Transfer, as well as analysis of the collective effect of the three transfer orders.

Wentworth. The instant Order of Transfer modified the prior court orders only insofar as it authorized Ms. Shanks's request to have Wentworth remit payment portions to an assignee, RSL (and in turn RSL's assignee, Extended Holdings), rather than directly to her. Both of the prior orders contained the following provision:

> Any further transfer of structured settlement payment rights by Payee may be made only after compliance with all of the requirements of the Act [SSPA].

Nothing in the May 2008 order or November 2008 order prevented Ms. Shanks from seeking authorization, pursuant to the SSPA, of a transfer of those payment rights that still belonged to her upon entry of each respective order. In fact, the November 2008 order was the result of Ms. Shanks's seeking such a transfer to Wentworth of additional payment portions remaining after entry of the first order. The difference with the order at issue is that Ms. Shanks sought transfer of her structured settlement payment rights to a factoring company other than Wentworth. We find no provision in either of the 2008 orders that prevented Ms. Shanks from entering a future transfer agreement with a different transferee, provided that the payment rights she transferred were her own and that the transfer complied with all requirements of the SSPA.

Wentworth also asserts that in entering the Order of Transfer at issue, the trial court violated and "ignored" the terms of the orders entered by the Anderson County and Cocke County Circuit Courts. Wentworth argues that the trial court improperly "modified the prior court-ordered obligation of [Wentworth] to its customer, Laurel Shanks" in requiring Wentworth to remit the previously unassigned portions of the periodic payments to RSL's assignee, Extended Holdings, rather than Ms. Shanks. We disagree.

In its Order of Transfer, the trial court stated in pertinent part:

> Portions of the Periodic Payments due beginning on July 1, 2015 through and including July 1, 2019 (the "Wentworth Serviced Payments"), as more particularly set forth and described herein and in Exhibit A, which include the RSL Assigned Payments, are currently being serviced by J.G. Wentworth Originations, LLC ("Wentworth"), as custodian, and not as principal, for the benefit of Ms. Shanks, and Sun Life and/or Liberty Life. Upon entry of this Order, the Wentworth Serviced Payments shall be received by Wentworth, as custodian, and not as principal, for the benefit of Ms. Shanks and Extended Holdings, Ltd. ("Assignee"), with such payments being remitted to Assignee by Wentworth promptly within five (5) business days of Wentworth's receipt of such payments from Liberty Life.

Wentworth filed an objection in this matter as an Interested Party asserting this Court cannot grant the proposed transfer. Wentworth claims that if this Court were to do so, then this Court's order would violate the Act by contravening prior court orders in violation of Tennessee Code Annotated §47-18-2603. The prior court orders Wentworth referenced are in Case No. A8LA0157 from the 7th Circuit Court of Anderson County, TN and in Case No. CV-031371-III . . . in the 4th Circuit Court of Cocke County, TN (the "Prior Wentworth-Shanks Orders"). This Court is not persuaded by Wentworth's arguments and Wentworth's objection is overruled.

Nothing in this Order is intended to or shall create a fiduciary, trust, principal-agent, or partnership relationship by and between Wentworth and RSL Funding, Assignee, or Ms. Shanks. Specifically, with respect to the Court's order that Wentworth shall receive certain lump sum structured settlement/annuity payments from Liberty Life from July 1, 2015 through and including July 1, 2019 (the "Wentworth Term Payments") and retain the portion of said payments which were transferred and assigned to Wentworth in connection with the transactions approved as part of the Prior Wentworth-Shanks Orders (the "Wentworth Assigned Payments"), and remit the totality of the remainder of said payments, which are the RSL Assigned Payments, (the "Wentworth-Extended Holdings Serviced Payments") to Assignee (Extended Holdings[,] Ltd.) from July 1, 2015 through and including July 1, 2019 (the "Wentworth Servicing Term"), the "Wentworth Servicing Arrangement" will not create any fiduciary, trust, principal-agent, or partnership by and between Wentworth, on the one hand, and/or RSL Funding, Assignee, or Ms. Shanks on the other hand. However, a special custodial relationship is being created wherein Wentworth is a servicer and custodian of the Wentworth Serviced Payments for the benefit of Ms. Shanks and Assignee. This special custodial relationship does not create any ownership rights or interest by Wentworth to or in the Wentworth Serviced Payments. Moreover, by virtue of this Final Order, Wentworth's obligations shall be to solely and exclusively to [sic] receive the Wentworth Term Payments, retain the Wentworth Assigned Payments, and remit the Wentworth-Extended Holdings Serviced Payments to Assignee as further described herein. Wentworth's obligation under this order terminates upon final payment to assignee as set forth in this order.

. . .

It is further **ORDERED** that the portion of the Periodic Payments which are the Wentworth Serviced Payments, as described below, due

-12-

beginning on July 1, 2015 through and including July 1, 2019 shall be forwarded by Wentworth, when, as and if received by Wentworth from Liberty Life within five (5) business days of their receipt, to Extended Holdings, Ltd. at [address], and no person other than Extended Holdings, Ltd. shall be entitled to receipt of the Wentworth Serviced Payments, such being:

- Two (2) annual payments each in the amount of $6250 beginning on July 1, 2015 through and including July 1, 2016;
- one (1) lump sum payment in the amount of $12,500 due and payable on July 1, 2017;
- one (1) lump sum payment in the amount of $15,000 due and payable on July 1, 2018; and
- one (1) lump sum payment in the amount of $20,000 due and payable on July 1, 2019.

It is further **ORDERED** that in the event that Assignee changes its physical address or is merged with or acquired by another individual or entity, such that Assignee ceases to exist, the Wentworth Serviced Payments shall be sent directly to that person or entity by Wentworth, after providing proper, advance, written notice to Wentworth. Further, notwithstanding the foregoing, Wentworth or Assignee are permitted to mutually agree to alter the payment method (including, but not limited to, ACH or wire transfer) or Designated Address without further order of the Court.

. . .

It is further **ORDERED** that RSL Funding or Assignee shall send a signed copy of this Order to Liberty Life, Sun Life, to counsel for Wentworth and directly to Wentworth at the address set forth below. Upon receipt thereof, Wentworth shall issue a formal acknowledgment letter to RSL Funding and Assignee of the transfer within ten (10) business days of the date of receipt of this Order of Transfer that the Wentworth Serviced Payments from July 1, 2015 through and including July 1, 2019 shall be made to Extended Holdings, Ltd. at [address] (unless a change of address has been provided to Wentworth in writing at least 30 days in advance of the effective date of such change of address by RSL Funding or Assignee). The formal acknowledgment letter to

-13-

be issued by Wentworth shall be delivered to Extended Holdings, Ltd. at the address set forth above, Attn: President.

(Paragraph numbering omitted.)

We note first that the trial court certainly did not "ignore" the terms of the two prior court orders, as demonstrated by the court's painstaking explanation of Wentworth's role as to the payment portions not transferred to it by the previous orders. Under the prior transfer orders, Wentworth was obligated to accept the full amount of each structured settlement payment, retain the amount Ms. Shanks had transferred to Wentworth, and remit the unassigned portion to Ms. Shanks. Pursuant to the SSPA, "[n]either the annuity issuer nor the structured settlement obligor may be required to divide any structured settlement payment between the payee and any transferee or assignee or between two (2) or more transferees or assignees." Tenn. Code Ann. § 47-18-2604(f). As Wentworth points out, it would be a violation of this provision to require Liberty (the annuity issuer) or Keyport (the structured settlement obligor) to divide periodic payments. The payments, therefore, must be sent to the transferee before they may be divided. Contrary to Wentworth's argument, however, we find that this statutory provision anticipates that there may be more than one transferee or assignee. *See* Tenn. Code Ann. § 47-18-2604(f). This statutory provision prohibits a transfer order from requiring the annuity issuer or structured settlement obligor to divide any periodic payments and does not apply to the transferee. *See id.*

According to the Order of Transfer at issue, Wentworth is obligated to accept the full amount of each structured settlement payment, retain the amount Ms. Shanks had previously transferred to Wentworth, and remit the remaining portion, now transferred to RSL by Ms. Shanks, to RSL's assignee, Extended Holdings. Thus, the only change in this obligation for Wentworth is that it must remit the remaining payment portions to Extended Holdings rather than to Ms. Shanks. In addition, the trial court directed Wentworth to remit the payments within five business days of receipt, a deadline not contained within the prior orders. The court also directed Wentworth to write one letter to the president of Extended Holdings, formally acknowledging receipt of the transfer order within ten days of receiving a copy of the order from RSL or its assignee. We determine that the trial court's addition of a reasonable deadline for processing the payment portions and the requirement of one acknowledgment letter are not overly burdensome.

Wentworth particularly objects to the trial court's characterization of Wentworth's responsibilities toward what the court described as the "Wentworth Serviced Payments" as a "custodial relationship." The trial court expressly stated that it did not intend by the Order of Transfer to "create a fiduciary, trust, principal-agent, or partnership relationship by and between Wentworth and RSL Funding, Assignee, or Ms. Shanks." Wentworth did, however,

already have a fiduciary relationship in place with Ms. Shanks in terms of its obligation to accept her total periodic payments, retain its assigned portion, and remit the remainder to her. We determine that this Order of Transfer did not *create* a fiduciary relationship between Wentworth and Ms. Shanks beyond the one previously in place.

Wentworth correctly notes that "[c]ourts cannot make contracts for parties but can only enforce the contract which the parties themselves have made." *Hafeman v. Protein Discovery*, 344 S.W.3d 889, 900 (Tenn. Ct. App. 2011). We do not, however, find this to be an instance of the trial court's creating a contract between Wentworth and RSL. Under the prior orders, Wentworth did not acquire an ownership interest in the payment portions not transferred to it. Instead, Wentworth serviced those portions by forwarding them to Ms. Shanks. Through her application for approval of the transfer to RSL, Ms. Shanks requested that RSL or its assignee receive the previously unassigned payment portions she would have received. The plain meaning of "custody" is the "care and control of a thing or person for inspection, preservation, or security." BLACK'S LAW DICTIONARY 412 (8th ed. 2004). We discern no error in the trial court's characterization of Wentworth's role in forwarding the previously unassigned payment portions to RSL's assignee rather than Ms. Shanks as "custodial." We conclude that the trial court's Order of Transfer did not violate the previous orders entered by the Anderson County and Cocke County Circuit Courts.[5]

Finally, as RSL correctly posits, an underlying public policy consideration supporting enactment of state SSPAs is the need for structured settlement transfers to be in the best interest of payees. *See, e.g., Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 599 F. Supp. 2d 809 (S.D. Tex. 2008) ("*Symetra I*") (applying the Texas SSPA, which is similar to Tennessee's SSPA, and explaining that "[t]he purpose of the 'best interests' finding is to make sure that the payee does not give up his or her right to the future-income stream in exchange for a much smaller present payment, unless there is good reason for the transaction."), *affirmed by Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 567 F.3d 754 (5th Cir. 2009) (incorporating rationale of district court decision); *see generally* Zitter, 27 A.L.R. 6th at 323 (noting several cases in other jurisdictions in which trial courts have denied transfer applications after finding that the transfers were not in the payees' best interest).

---

[5]On appeal, Wentworth also contends that RSL collaterally attacked the prior court orders by filing the application of transfer. RSL argues that Wentworth is barred from raising this argument for the first time on appeal. *See Fayne v. Vincent*, 301 S.W.3d 162, 170-71 (Tenn. 2009) (noting that "[t]he jurisprudential restriction against permitting parties to raise issues on appeal that were not first raised in the trial court is premised on the doctrine of waiver."). We determine Wentworth's contention in this regard to be a restated argument that the Order of Transfer contravened the prior orders, and while not barred, the argument is moot in light of our conclusion that the Order of Transfer did not contravene the prior orders.

In the case at bar, Wentworth does not dispute the trial court's express finding that the Order of Transfer was in Ms. Shanks's best interest. *See* Tennessee Code Annotated §§ 47-18-2603(3), 47-18-2604(c) (delineating factors for the trial court to consider when determining the best interest of the payee). Upon our careful and thorough review of the record, we determine that the evidence does not preponderate against the trial court's finding that the Transfer Agreement met the requirements of the SSPA, including that it did not contravene applicable law and was in Ms. Shanks's best interest. The trial court did not err by entering the Order of Transfer.

## V. Conclusion

For the reasons stated above, we affirm the Order of Transfer entered by the trial court. The costs on appeal are assessed against the Appellant, JG Wentworth Originations, LLC. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE